

September 27, 2024

Hon. Mary Kay Vyskocil
United States District Judge
500 Pearl St.
New York, NY 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/7/2024
```

**Re:** *Dawson v. Student Loan Solutions, LLC*, et al., No. 23 Civ. 9690 (MKV)

Dear Judge Vyskocil:

We write on behalf of Plaintiff Roxanne Dawson and Defendant Student Loan Solutions, LLC ("Student Loan Solutions" or "SLS") regarding Plaintiff's request for a conference pursuant to Your Honor's Individual Practice Rule 3.D and Local Rule 37.2 regarding three documents that Plaintiff believes are relevant to her individual claims and that SLS has not produced. Plaintiff also writes to alert the Court that she is substantially narrowing her June 7, 2024 request for class discovery, which the Court intends to address at the post-discovery conference scheduled for October 22, 2024; and to seek clarification from the Court regarding the submission of materials in advance of that conference.[1]

### I.  Plaintiff's Request to Compel Production of Certain Documents Relevant to Her Individual Claims Identified for the First Time at Defendant's Deposition

**Plaintiff's Statement:** On September 10 and 11, 2024, Plaintiff conducted the Fed. R. Civ. P. 30(b)(6) depositions of SLS and its third party debt collector, Williams & Fudge, Inc. ("W&F"). Christopher Ruh, who is both the managing member of SLS and the President of W&F, appeared as both parties' corporate representative.

Testimony in those depositions identified for the first time a limited number of documents that are in SLS/W&F's possession[2]; that are responsive to Plaintiff's Requests for Production[3]; and that had not been previously produced. All of these documents are relevant to Plaintiff's individual claims, which are supported by undisputed evidence. It is undisputed that in 2017, SLS purchased a defaulted private student loan that Plaintiff obtained from Bank of America in 2007, which went into default in 2011 and for which the last payment had been made in 2013. Both before and after the sale, W&F, acting first for Bank of America and then for SLS, attempted to collect the full balance of Plaintiff's loan from her. In 2022—that is, fifteen years after the loan was originated, eleven years after it went into default, nine years after the last payment was made on it, and five years after SLS purchased it — SLS sued Plaintiff in Bronx Civil Court to collect on it. Everyone agrees that the applicable statute of limitations is three years. The collection action was obviously time-barred, but SLS attempts to evade that common-sense conclusion by asserting that it "accelerated" the debt for the first time in late 2021 and that the statute of

---

[1] Because the case management aspects of this letter may affect each other, Plaintiff thought it would be most helpful to present these issues in a single letter to the Court rather than a series of letters. We respectfully request the Court's permission to allow this letter to exceed the four page limit provided by Your Honor's Individual Rules.
[2] SLS has not disputed that it controls W&F's documents; to the contrary, it has admitted that it has access to W&F's documents regarding Ms. Dawson and produced certain such documents.
[3] Specifically, all of these are responsive to her RFP 1, issued on February 2, 2024, seeking "All documents and electronically stored information concerning Plaintiff, Plaintiff's Loan, or the Dawson Collection Action." They are also responsive to various other Supplemental RFPs issued on March 11, 2024, including 11 ("All agreements or contracts… relating to the Loans or the Transaction"); 12(a)-(b) ("All policies… Concerning the acceleration of any Loan [and] Concerning the statute of limitations applicable to any Loan or any Collection Action"), and 18 ("All … license applications").

limitations clock started running only then (a decade after default). But this argument is legally and factually flawed in multiple ways, any one of which would independently make SLS's suit against her illegal.

The day after the depositions, Plaintiff asked SLS to produce the documents identified in the deposition, and on September 16, 2024, on the parties' joint request, the Court extended the discovery deadline until September 27, 2024 to allow time for the Parties to confer and for production. On September 26, 2024, SLS produced some, but not all, of the requested documents, and the Parties met and conferred regarding the remaining documents. Plaintiff now seeks to compel SLS to produce:

1. *The contract between SLS and the law firm (the Echols Firm) that advised it on the collection of Ms. Dawson's loan via acceleration*. SLS has claimed that this document is privileged, but it is well-established that retainer agreements between client and counsel are not privileged.[4] SLS also asserts that SLS's retention of Echols was not relevant and so the request for this document is "harassment." But the scope and nature of the retention is highly material to issues at the heart of Ms. Dawson's claims, which turn not just on the factual question of whether Bank of America sought to collect the full balance on Ms. Dawson's loan before selling it to SLS, but also whether the statute of limitations and acceleration theory that SLS applied to Ms. Dawson's account was legally baseless and contrived solely as a pretense so that the company could sue on debts that were obviously time-barred. The deposition testimony established that theory, or at least the cover for it, originated with the Echols Firm — a firm "own[ed]" by a member of SLS with a personal financial stake in these collections. *See* SLS Tr. 87:5-16, 199:4-22.[5] The nature of that retention is thus highly relevant; the document is responsive to Ms. Dawson's requests; the burden of production is negligible; and there is no other reason to withhold the document. Plaintiff does not understand SLS's assertion that the request is harassing, but to mitigate Defendant's concern, would agree to keep the document confidential under the Protective Order.

2. *A full document showing SLS's statute of limitations theory from which a 2-page portion was publicly filed*. SLS testified that a document it voluntarily produced to Ms. Dawson in the collection action it brought against her, and publicly filed in that case, is an excerpt from a larger document containing additional material of the same nature. *See* SLS Tr. 159:10-24, 203:2-8; W&F Tr. 120:16-24. SLS asserts this document is privileged because it was drafted by the Echols Firm, but by intentionally disclosing it to Ms. Dawson and then publicly filing it, SLS plainly waived any potentially applicable privilege. And even if disclosure were inadvertent or unauthorized, privilege would still be waived, since, despite knowing for many months—if not longer—that the document was produced, SLS did not "act promptly or diligently in rectifying the" disclosure.[6] Indeed, SLS did not act at all to assert privilege, including in the deposition in which the document was discussed, and has never in any form provided the basic information that is its burden to establish to defend a claim of privilege. Given that this document was widely distributed around the country, and SLS apparently took no steps to hold the document

---

[4] See, e.g., 24 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE § 5484 (2024); *Torres v. Toback, Bernstein & Reiss LLP*, 278 F.R.D. 321, 322 (E.D.N.Y. 2012) (citing "long and unbroken line of cases" in Circuit holding that information in retainer agreements is not privileged "absent special circumstances").

[5] Citations are to the preliminary transcripts that are still subject to the Parties' review.

[6] *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2012 WL 651536, at *5 (S.D.N.Y. Feb. 28, 2012) (citing standard and finding privilege waived over disclosed document).

      confidential after knowing about its counsel's intentional disclosure, the Court should reasonably hold that the scope of SLS's waiver extends to the full document.

3. *A list of licenses held by SLS or W&F in New York City or New York State, or, alternatively, copies of any such licenses or any licensure applications submitted to obtain them.* Whether SLS and W&F hold licenses in New York City and/or New York State is directly relevant to Plaintiff's claims. For example, SLS hinges its statute of limitations theory on its assertion that it purchased installment contracts, and New York requires companies that "purchase… retail installment contracts, obligations, or credit agreements" to hold a license. N.Y. Banking Law. §§ 491(7), 492(1). Plaintiff's RFP initially sought full license applications, and SLS objected, including on the basis of proportionality. Rather than press the issue, Plaintiff asked at the deposition which licenses SLS and W&F hold. Ruh testified that he believed SLS was licensed in some capacity with New York State and City, but "did not know" which specific licenses it held other than debt collection; his testimony as to W&F was similar. SLS Tr. 30:7-18, 204:20-205:5; W&F Tr. 21:25-22:15. This topic was within the scope of the 30(b)(6) deposition, and no objection to scope was interposed. To make discovery less burdensome on Defendant, Plaintiff will accept a representation as to which licenses SLS and W&F hold in New York, *or* copies of the licenses, *or* their applications. Plaintiff frankly does not understand why this request is disputed.

**Defendant's Statement:**

Plaintiff is seeking documentation that is wholly irrelevant to the issues to be decided in this lawsuit. Plaintiff's Amended Complaint contends that SLS violated the FDCPA because it attempted to collect on account outside the statute of limitations on "information and belief" that Bank of America accelerated the loan prior to selling it to SLS. Plaintiff cherry picks portions of objections and cites to both case law and statutes that are inapplicable under the circumstances. In an effort to avoid a discovery dispute, SLS has provided more documents that the federal rules require, including documents of third party W&F, which Plaintiff did not subpoena.[7] None of the requested documents have any bearing whatsoever on the core issue of this case, which is whether Bank of America accelerated Plaintiff's loan prior to selling it to SLS.[8] Plaintiff's letter now attempts to modify her sole theory in the Amended Complaint that the loan was accelerated prior to SLS acquired it because after months of discovery, including depositions and subpoenas served on Bank of America, Plaintiff's fishing expedition has yielded no information support her suspicions. Plaintiff's position –"on information and belief" - that the loan was accelerated by Bank of America prior to the sale to Defendant remains in the same spot it was prior to discovery - a wishful theory without any evidentiary support.

Plaintiff's Amended Complaint is clear that this case turns on when Plaintiff's loan was accelerated. Specifically, the Amended Complaint contends:

- "Student Loans Solutions' false representations regarding the acceleration of Class Members' loans have been designed to conceal these representations' fraudulent nature by omitting that Student

---

[7] SLS does dispute that it has the general control of W&F documents. SLS can direct W&F to provide documents which belong to SLS. SLS's general manager is also the president of W&F, so can access W&F documents by virtue of his role as president. However, that does not mean SLS can generally control W&F documents.

[8] Plaintiff has no evidence Bank of America previously accelerated her loan, but SLS will deal with this issue separately in its pre-motion letter requested leave to move for summary judgment.

> Loan Solutions possessed documentation that would show or suggest that loans were previously accelerated before being sold to Student Loan Solutions" Doc. 16, ¶ 108; and

- "The common questions of law include whether Student Loans Solutions' representations that the loans were accelerated after being acquired by Student Loan Solutions were unfair, deceptive, or misleading in violation of the FDCP and New York G.B.L. § 349." Doc. 16, ¶ 113.

Plaintiff's attempt to distance herself from her core allegations in the Amended Complaint because she has been unable to unearth any evidentiary support must be rejected.

*The contract between SLS and the Echols Firm.*  SLS's full objections were: "Defendant SLS objects to this request on the grounds that it seeks documentation that is not relevant to any party's claim or defense and is not proportional to the needs of the case, and is therefore harassing. More specifically, the terms of any contract between SLS and the Echols Firm have no bearing on whether Plaintiff's loan was accelerated. Defendant SLS further objects to the extent the document sought is protected by any applicable privilege." Plaintiff wholly ignores SLS's primary objections and, instead, focuses solely on the application of privilege. However, even if no privilege applies, the agreement must have some relevance.[9] It does not. Plaintiff contends in conclusory fashion that "[t]he scope and nature of the retention is highly material" but does not attempt to explain why. Plaintiff contends "the statute of limitations and acceleration theory that SLS applied to Ms. Dawson's account—the propriety and legality of which is central to Ms. Dawson's claims—originated with the Echols Firm." First, it is not a "theory", but an accurate representation of the law. Plaintiff executed a loan agreement which required her balance to be repaid in monthly installments, and which incorporated a truth in lending disclosure that outlined the payment schedule. The loan agreement also included an optional acceleration clause. SLS accelerated the loan and then filed suit on the accelerated balance and the outstanding principal portions of the payments within the applicable statute of limitations. The analysis of the case law supporting SLS's position that the statute of limitations runs as to each missed payment, but not the outstanding balance unless and until the loan is accelerated, although privileged, was inadvertently filed in the underlying collection action. In short, Plaintiff is fully aware of the "theory" under which Plaintiff is proceeding. Whether the Echols Firm provided additional services to SLS and the amounts SLS agreed to compensate the Echols Firm are irrelevant to the "theory." SLS therefore believes this request is intended solely for the purpose of harassment.

*The full legal analysis of the statute of limitations for installment loans.*  The Echols Firm conducted legal analysis for SLS, which SLS provided to W&F (SLS's third party debt collector). W&F provided the legal analysis it to counsel filing lawsuits on SLS's behalf.  This is the very definition of legal advice subject to the attorney-client privilege. Plaintiff's position that the Echols Firm's legal advice was shared with multiple lawyers also representing SLS in collection actions does not change the analysis. Notwithstanding this fact, two pages of this document were inadvertently filed in the underlying state court collection action. Plaintiff contends this amounts to a waiver of privilege with respect to the entire document. She cites no

---

[9] *See, e.g., In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) ("Limitations are imposed on discovery sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matters protected by a recognized privilege.")

authority for this proposition, instead relying on an unpublished district court opinion which lays out the standard when privilege is waived with respect to *disclosed* communications, but does not in any way address *undisclosed* communications. The inadvertent disclosure of portion of a matter governed by the attorney-client privilege does not amount to a blanket disclosure of the privilege.[10] Moreover, the analysis of the statute of limitations with respect to other jurisdictions is wholly irrelevant with respect to Plaintiff's loan.

*Licenses for SLS and W&F.* As an initial matter, Plaintiff did not request these items in her Requests for Production. She asked for "license applications" of SLS and SLS objected. To the extent Plaintiff contends such licenses are somehow included in broad based discovery requests about "relevant documents," she neither cites any authority requiring either SLS or W&F to be licensed nor any authority which would invalidate any actions taken by them if they were not licensed. She says "New York requires companies that 'purchase… retail installment contracts, obligations, or credit agreements' to hold a license. N.Y. Banking Law. §§ 491(7), 492(1)." These statutes on their face plainly do not apply to SLS. Pursuant to this statute, "[r]etail installment contract" is defined as "an agreement, entered into in this state, pursuant to which the titled to, the property or a security interest in or a lien upon the goods, which are the subject matter of a retail instalment sale, is retained or taken by a retail seller form a retail buyer as security, in whole or in part, for the buyer's obligation. NY. Banking Law. § 491(6). "[O]bligation" is defined as "an agreement, entered into in this state, pursuant to which the buyer promises to pay, in instalments, the time sale price or price of goods and/or services, or any part thereof." *Id.* at (6-a). "[C]redit agreement" is defined as "an agreement entered into in this state, pursuant to which the buyer promises to pay, in installments, his outstanding indebtedness from time to time to a retail seller, not evidenced by a retail instalment contract or obligation, for one or more items of goods or services, whenever purchased or obtained, which provides for a service charge an dunder which installment payments apply to his outstanding indebtedness from time to time." *Id.* at (6-b). The loan at issue is an unsecured loan made by Bank of America to Plaintiff, which Plaintiff used to pay for school. Bank of America did not provide any goods or services to Plaintiff and the loan was not secured by any goods. This statute does not apply. As to any licenses issued by New York City, whether SLS was licensed by New York City has no bearing on whether Plaintiff's loan was accelerated by Bank of America prior to SLS acquiring same.

## II. Plaintiff's Update to Alert the Court That She Is Substantially Narrowing Her Outstanding June 7, 2024 Request to Compel Certain Class-wide Discovery

**Plaintiff's Statement**: On June 7, 2024, the Parties submitted a joint letter regarding Plaintiff's request to compel SLS to produce class-wide discovery. At the July 9, 2024 conference, Your Honor ordered the Parties to complete discovery as to Plaintiff's individual claim and deferred consideration of Plaintiff's request for class-wide discovery to the post-discovery conference. See ECF No. 47. Plaintiff writes now to alert the Court that she is substantially narrowing her June 7, 2024 request for class-wide discovery because at SLS's deposition, SLS testified that virtually all of the relevant collection and acceleration practices Plaintiff challenges were the same for all class members obviating all but the most

---

[10] *See, e.g., United States v. Aronoff*, 466 F. Supp. 855, 862 (S.D.N.Y. 1979) ("But where, as here, the privilege-holder has made assertions about privileged communications not to a factfinder at trial, but to his adversary, before trial, and has not, by any affirmative act, placed these communications in issue, it is harder to justify revoking his privilege as to matters not disclosed.").

cursory class-wide document discovery.[11]

Plaintiff is providing to the Court an updated list of class-wide discovery she seeks because it may be relevant to the Court's decision as to the most efficient and sensible staging of the next steps in this case, including as to Plaintiff's request below regarding the timing of summary judgment related submissions. Plaintiff now seeks only the following, very limited class-wide discovery:

1. *Loan Notes for the Class:* Certain of Plaintiff's class-wide arguments, and Defendants' potential class-wide defenses, hinge on the terms of the notes governing Class Members' loans. SLS has already produced a "template" loan note for Ms. Dawson, which it received from Bank of America in the sale; and Ruh testified that the other Class Members' loans all followed either that template or a limited number of similar templates also provided by Bank of America. Plaintiff's Supplemental RFP 1(c) sought all such loan notes. They would present virtually no burden to produce, since Ruh testified that W&F possesses those templates "on one of [its] drives." (SLS Tr. 125:1-15; W&F Tr. 75:18-76:17).
2. *Number of Class Members with Acceleration and Lawsuits:* Plaintiff would seek from SLS, via interrogatory, the total number of Class Members against whom SLS filed a lawsuit, and against whom SLS accelerated their debt, information that SLS confirmed during the deposition is readily available via an automatic process (SLS Tr. 152:12-23).
3. *Loan Tape:* Plaintiff's Supplemental RFP 1(a) specifically requested "The excel file titled 'BANA Non-Performing Student Loan Tape (10.30.17.vF)," which was provided to SLS by Bank of America at the time of the sale of the class members' loans that contains information relating to class members and their loans. SLS testified that W&F currently possesses this document in excel format (SLS Tr. 137:1-10). Plaintiff will accept this file with certain personal identifying information, such as SSNs and dates of birth, redacted.
4. *Class Damages Discovery:* Plaintiff seeks the Court's direction as to whether discovery on class-wide damages should proceed now or be deferred until after resolution of liability. To the extent that the Court prefers to engage in damages discovery now, Plaintiff would seek, via interrogatory, information on the total funds collected from class members as well as a breakdown of such funds collected after acceleration and collected after litigation was commenced. Ruh confirmed that this information is readily available via an automatic process (SLS Tr. 205:7-206:22; W&F Tr. 171:11-174:3).
5. *Limited Requests for Admission:* Plaintiff seeks leave to serve Requests for Admission to the extent necessary to confirm deposition testimony regarding SLS's class-wide practices.

Plaintiff and Defendant have conferred and Defendant represented that it will present its substantive response to Plaintiff's revised request for class discovery in the joint letter due October 15, 2024, consistent with Your Honor's August 5, 2024 scheduling order.

---

[11] For example, Ruh testified that SLS obtained and reviewed substantially the same set of documents before suing each Class Member (SLS Tr. 70:7-72:17, 143:21-144:25); that SLS never possessed, and thus did not review, certain key documents as to all Class Members, including account notes from W&F's collections efforts prior to 2014 (SLS Tr. 171:19-172:18), bills from Bank of America (SLS Tr. 173:18-174:23), charge-off notices sent by Bank of America (SLS Tr. 175:10-17), and all collections letters sent by W&F prior to 2018, which were destroyed (SLS Tr. 177:7-12); and that prior to acceleration and suit, collection efforts were repeatedly made to collect the full charged-off balance on each Class Members' loan (W&F Tr. 104:14-105:7).

**Defendant's Statement**: It is Defendant's position that Plaintiff has no evidentiary basis to proceed with this action and Defendant intends to file a pre-motion request requesting permission to move for summary judgment.

### III. Plaintiff's Request for Clarification on Submissions in Advance of the October 22, 2024 Post-Discovery Conference

The Court's August 5, 2024 scheduling order, ECF No. 55, directed the parties to submit a joint letter to the court one week in advance of the October 22, 2024 conference, and directed that the letter include a description of any additional discovery and a statement of whether any party intends to file a motion for summary judgment. The Parties will timely submit that letter, and, as indicated, Plaintiff understands that Defendant will set forth its substantive position on Plaintiff's request for limited class discovery at that time.

Separately, Your Honor's Individual Practice Rules provide that any party seeking to move for summary judgment should file both a pre-motion letter and Rule 56.1 statement one week in advance of the post-discovery conference. In light of the August 5, 2024 order and Plaintiff's pending request for limited individual and class-wide discovery, she respectfully requests that the Court confirm her understanding that the parties should wait to file any summary judgment pre-motion letters, Rule 56.1 statements, and Rule 56.1 counter-statements until after the Court has determined what additional discovery is appropriate and a deadline for such discovery.

Of course, should the Court prefer that the Parties file their pre-motion letter and 56.1 statement with the evidence already in her possession one week in advance of the October 22 conference, Plaintiff will do so, as to the theories of individual and classwide liability that do not hinge on the remaining individual and class-wide discovery requested above, such as the terms of the Class Members' loan notes.

---

**Plaintiff's motion to compel is DENIED for lack of relevance as to the first and third requested documents, and unwaived privilege as to the second document. The Court will address Plaintiff's request for class-wide discovery at the conference scheduled for October 22, 2024 at 11:00 AM. In light of the remaining discovery issues in this case, the parties are not required to file pre-summary judgment letters or materials in advance of the October 22 conference. However, the parties shall still file, no later than October 15, 2024, a joint submission containing the information detailed in the Scheduling Order at ECF No. 55. SO ORDERED.**

Date: 10/7/2024
New York, New York

*(signature)* Mary Kay Vyskocil
United States District Judge

Respectfully submitted,

/s/ Jessica Ranucci
Jessica Ranucci
Danielle Tarantolo
*Counsel for Plaintiff*