# EXHIBIT C

In the Matter of:

DAWSON

**-against-**

STUDENT LOAN SOLUTIONS, ET AL.

Deposition of:

CHRISTOPHER PAUL RUH

*September 11, 2024*

*Cain & Crane Court Reporters, LLC*

*Post Office Box 23833*

*Charlotte, North Carolina 28227*

*704.545.3510*

*www.cainandcrane.com*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROXANNE DAWSON, individually  )
and on behalf of all persons  )
similarly situated,           )
                              )
              Plaintiffs,     ) No. 23 Civ. 9690 (MKV)
                              )
      vs.                     )
                              )
STUDENT LOAN SOLUTIONS, LLC,  )
and ROACH & MURTHA ATTORNEYS  )
AT LAW, P.C.,                 )
                              )
              Defendants.     )

**CERTIFIED ORIGINAL**

DEPOSITION OF CHRISTOPHER PAUL RUH

* * * * *

Taken by Plaintiffs in Charlotte, North Carolina

September 11, 2024

Reported by: Tavi L. Fraga, Stenographic Reporter
Cain & Crane Court Reporters, LLC

A P P E A R A N C E S

COUNSEL FOR PLAINTIFFS:

Jessica Ranucci, Esquire

Danielle Tarantolo, Esquire

Andrea Ashburn, Esquire

NEW YORK LEGAL ASSISTANCE GROUP

100 Pearl Street, 19th Floor

New York, New York  10004

212-613-5000

jranucci@nylag.org

dtarantolo@nylag.org

aashburn@nylag.org

COUNSEL FOR DEFENDANTS:

Brendan H. Little, Esquire

LIPPES MATHIAS, LLP

50 Fountain Plaza, Suite 1700

Buffalo, New York  14202

716-853-5100

blittle@lippes.com

A P P E A R A N C E S
(Continuing)

COUNSEL FOR WILLIAMS & FUDGE, INC.:

David Grassi, Esquire

FROST ECHOLS, LLC

224 Oakland Avenue

Rock Hill, South Carolina   29730

803-329-8970

david.grassi@frostechols.com

C O N T E N T S

                                                                    PAGE

DIRECT EXAMINATION BY MS. RANUCCI                                      6

                              *  *  *

      (No exhibits were marked for identification.)

REPORTER'S NOTE:

* If this transcript contains quoted material,

such material is reproduced as read or

quoted by the speaker.

Cain & Crane Court Reporters
704.545.3510

On Wednesday, September 11, 2024, commencing at 2:48 p.m., the deposition of Christopher Paul Ruh was taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure on behalf of the Plaintiffs at the law offices of Cadwalader, Wickersham & Taft, LLP, 650 South Tryon Street, Suite 1400, Charlotte, North Carolina.

* * *

P R O C E E D I N G S

Whereupon, CHRISTOPHER PAUL RUH, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. RANUCCI:

Q. I'm going to ask you now a very small number of questions in your personal capacity.  As we've been through the instructions for your depositions twice in the past 30 hours, I'm not going to do them again.

A. I was going to say you don't have to.

Q. Do you have any questions about what your obligations are right now?

A. I do not.

Q. Thank you.  I will say that these questions are based on your personal knowledge.  In the other

depositions, your attorneys have instructed you or have objected on the basis that certain questions are outside of the deposition notice.  But here I'm asking you to answer your questions based on personal knowledge, if you have it, regardless of whether or not it was included in either of those notices.

Do you understand?

A.   Yes.

Q.   Thank you.  With respect to the subpoena received by Williams & Fudge by the New York City Department of Consumer Affairs, what, if anything, do you remember about the time period that it was received?

A.   I do not remember.

Q.   Do you know what job you had at the time?

A.   I do not.

Q.   Were you involved in responding to it?

A.   I do not recall.  I don't remember when it was.

Q.   Do you remember if you had any role with respect to the subpoena?

A.   I do not remember.

Q.   How do you know it exists?

A.   I remember us receiving it and --

Q.   Do you remember any other subpoenas?

A.   I do not.

Q.   Civil investigative demands?



A.   No.

Q.   I asked earlier a question about regulatory examinations.  Do you recall Williams & Fudge or Student Loan Solutions ever having an examination by a regulator?

A.   I do.

Q.   Which company?

A.   I cannot disclose that.

Q.   And what's your understanding of why you cannot disclose it?

A.   I cannot disclose it.

Q.   Have you been advised by an attorney not to disclose it?

A.   Yes.

Q.   Which attorney?

A.   Attorney for Williams & Fudge.

Q.   From The Echols Firm?

A.   Yes.

Q.   Other than the Bank of America loans, SLS has purchased two other portfolios; is that right?

A.   Yes.

Q.   Are those also student loans?

A.   Yes.

Q.   Do you know from whom?

A.   I do.


Cain & Crane Court Reporters
704.545.3510

Q.  Who is it?

A.  Iowa Student Loan Liquidity Corporation and Sallie Mae Bank.

Q.  And approximately when did SLS purchase each of those?

A.  Iowa was 2008.  Sallie Mae is a current relationship.

Q.  Meaning SLS has already purchased loans from Sallie Mae?

A.  It purchases monthly.

Q.  Okay.  Approximately how many loans were in each of those purchases, if you know?

A.  I don't recall off the top of my head.

Q.  Do you know if they were bigger or smaller than the approximately 12,000 from Bank of America?

A.  Smaller.

Q.  Has Williams & Fudge initiated lawsuits on the Iowa loans?

A.  Yes.

Q.  And on the Sallie Mae loans?

A.  I do not recall.

Q.  Are those loans installment loans?

A.  I do not know off the top of my head.

Q.  Does SLS prepare amortization tables for those loans in the same way that they do for the SLS loans?

            MR. LITTLE:  Form.

A.  Could you ask that again?

Q.  Yeah.  Does SLS use the Tru Value software to prepare amortization tables for the Iowa loans?

A.  No.

        MR. LITTLE:  Form.

Q.  Does SLS use amortization tables to prepare -- apologies.

        Does SLS use Tru Value to prepare amortization tables for the Sallie Mae loans?

        MR. LITTLE:  Form.

A.  As I stated, I'm not sure if there's been any litigation on that portfolio.

Q.  Did Williams & Fudge accelerate any of the Iowa loans?

A.  I could not tell you.

Q.  Did Williams & Fudge accelerate any of the Sallie Mae loans?

A.  I could not tell you.

Q.  Have you ever been sued personally in relation to collection of time-barred debt on a Bank of America loan -- let me state that again.

        Have you ever been sued personally in a lawsuit alleging collection of time-barred debt on a Bank of America loan?

A.  I could not tell you what the allegations were, but I



have been sued personally.

Q. And your understanding is those were relating to Bank of America loans?

A. Yes.

Q. How many times?

A. I have no idea.

Q. More than five?

A. I couldn't even guess.

Q. Has Williams & Fudge been sued before in lawsuits relating to the Bank of America loans?

A. I have no personal knowledge.

Q. So you don't know when Williams & Fudge is sued?

A. As my capacity at Williams & Fudge?

Q. Well, as --

A. I'm confused about all this.

Q. Yeah, yeah. No, this is -- there's no trick questions here. You're a person. You either remember things or don't.

So do you actually remember if Williams & Fudge has ever been sued relating to a Bank of America loan?

A. Yes, they have.

Q. How many times?

A. I have no idea.

Q. More than five?

A.   I have no idea.

Q.   In your role as president, do you read lawsuits filed against Williams & Fudge?

A.   Yes.

Q.   In your role as president, do you read lawsuits filed -- apologize.

In your role as managing member and general manager, do you read lawsuits filed against Student Loan Solutions?

A.   Yes.

Q.   Do you read litigation filings that assert counterclaims against Williams & Fudge?

A.   Yes.

Q.   And counterclaims against Student Loan Solutions?

A.   Yes.

Q.   So have you read a number of lawsuits that have alleged that Williams & Fudge or Student Loan Solutions collected time-barred debt --

MR. LITTLE:  Form.

Q.   -- on Bank of America loans?

MR. LITTLE:  Object to the form.

A.   I really don't know how to answer the question because you said "a number."

Q.   Starting with, I guess, SLS, has SLS been sued on Bank of America loans?

A. Yes.

Q. By us, for one?

A. Yeah.  Trust me on that.

Q. How many others?

A. I have no idea.

Q. But you've read them?

A. Yes.

Q. More than five?

A. I don't know.

Q. More than 50?

MR. LITTLE:  Object to the form.

A. I don't know.

Q. Okay.  Have you ever changed any policies at Student Loan Solutions in response to a lawsuit being filed?

MR. LITTLE:  Him personally, has he ever changed any policies?

MS. RANUCCI:  Uh-huh.

MR. LITTLE:  Object to the form.

A. Not me personally.

Q. Are you aware of any policies at Student Loan Solutions that have been changed in response to a lawsuit being filed?

MR. LITTLE:  Object to the form.

A. I'm not aware.

Q. Were you surprised how many lawsuits were filed

against Student Loan Solutions?

MR. LITTLE:  Object to the form.

A.  What do you mean by was I surprised?  I don't have a number.

Q.  Did you expect the number of lawsuits to be filed that was the number filed?

MR. LITTLE:  Object to the form.

A.  What number?

Q.  You've read them all.  I haven't read them all. You've read them all.  So --

MR. LITTLE:  Come on.  He says he doesn't know.  Let's move on.  We've been patient for two days.

Q.  Does Williams & Fudge collect on any other installment loans other than SLS?

A.  I believe I've answered that several times.  I don't know.

Q.  Can you recall any?

A.  Again, I believe I've answered that several times.  I do not know.

Q.  So you can't recall any?

A.  I can't recall any.

MR. LITTLE:  Object to the form.

Q.  You know an awful lot of things about Williams & Fudge, so I just want to be clear.



MR. LITTLE:  And you deposed him for five hours.  Move on.

Q.  Can you recall any account on which Williams & Fudge has sent an acceleration notice other than an SLS account?

MR. LITTLE:  Object to the form.

A.  Again, I've answered this one before, as well.  I do not recall.

Q.  So you can't recall any account in all of Williams & Fudge's accounts that sent an acceleration notice?

A.  I'm --

MR. LITTLE:  Object to the form.

A.  I'm not involved with all the accounts at Williams & Fudge.

Q.  But you can't recall one?

A.  Right.

Q.  If you were looking at a loan, how would you figure out if it was an installment loan?

MR. LITTLE:  Object to the form.

A.  What kind of loan?

Q.  Student loan.

A.  A student loan for who?

Q.  Anyone.  What would you do to figure it out?

A.  I don't know why I would be looking at it.  Could you explain that?



Q. If a new client handed you a loan contract and some underlying documentation and said, Is this an installment loan or not, what would you look at?

MR. LITTLE:  Object to the form.

A. I'd provide it to my legal counsel and ask them.

Q. So what does -- you said that Loom Capital is a passive debt buyer; is that right?

A. Correct.

Q. What kind of debts does it purchase?

A. For financial institutions.

Q. What does that mean just in regular terms?

A. Defaulted credit cards.  Auto deficiencies.

Q. Not student loans?

A. Correct.

Q. How long have you known Chad Echols?

A. 20 years.

Q. In what capacity?

A. When he first started with Williams & Fudge.

Q. So Chad Echols used to work at Williams & Fudge?

A. He was in-house counsel.

Q. So after he was an attorney, he was -- sorry.  Just to be clear.

So he worked for Williams & Fudge as an attorney and then at some subsequent point left and works for a law firm?

A.   Created his own law firm.

Q.   Does Williams & Fudge have an in-house attorney currently?

A.   No.

Q.   When did he leave Williams & Fudge?

A.   You'd have to ask him.

Q.   But you met him when he worked at Williams & Fudge?

A.   Yes.

Q.   How long have you known Clay Goodyear?

A.   Since he started working at Williams & Fudge.

Q.   About how long ago was that?

A.   You'd have to ask him.

Q.   How long have you known David Williams?

A.   When I first started -- no.  He was after me.  When he started working at Williams & Fudge.

Q.   About how long was that?

A.   You'd have to ask him.

Q.   When we were talking about the funding of this sale yesterday, I believe that I understood that certain members -- that each member made a contribution in cash and that three members took out individual loans in addition to that; is that correct?

A.   No.

         MR. LITTLE:  Object to the form.

Q.   Could you clarify?

A.  I think I clarified this yesterday.  Each member made a capital contribution, as well as three members lent additional money to Student Loan Solutions.  It was not a separate loan by the member.

Q.  How much was the capital contribution for each person?

A.  I believe it was 50,000.

Q.  And you stated that each of the three people lent 150,000; is that right?

A.  Yes.

Q.  Did you have -- so that means you contributed 200,000 total, 50 plus the 150 that was a loan?

        MR. LITTLE:  Object to the form.

A.  Yes.

Q.  Did you have that 200,000 in cash or did you have to obtain financing?

A.  I don't see why I have to answer this.

        MR. LITTLE:  Yeah, I'm directing him not to answer.  We're going too far now.

        MS. RANUCCI:  On what basis?

        MR. LITTLE:  It's not relevant.

Q.  Was there a $260,000 line of credit obtained on the residence that you lived in in October 2017?

        MR. LITTLE:  Objection.  Not relevant. He's not answering.

A.  I'm not answering.

Q.  Just for the record, can you say the basis?

            MR. LITTLE:  It's not --

Q.  On the record, can you say the basis why you're not answering?  I believe it's because your attorney just directed you.

            MR. LITTLE:  I'm directing the witness not to answer, so the record is clear.

            MS. RANUCCI:  Just for the record, we're reserving the right to reopen if we need to.

            MR. LITTLE:  You can reserve all the rights you need to.  Love to bring this in front of a judge.

Q.  Were you worried that if you didn't make money through Student Loan Solutions, the bank could foreclose on your house?

            MR. LITTLE:  Object to the form.  And directing the witness not to answer.

            MS. RANUCCI:  Okay.  I think we're done.

            MR. LITTLE:  So the record is clear, I don't have any questions.

            MR. GRASSI:  No questions.

            (Reading and signature were reserved.)

            (The deposition was concluded at 3:04 p.m.)

A M E N D M E N T   P A G E

PLEASE DO NOT WRITE WITHIN THE TRANSCRIPT ITSELF. LIST ANY CORRECTIONS BY PAGE AND LINE NUMBER ON THIS SHEET.  IF ADDITIONAL PAGES ARE NECESSARY, PLEASE FURNISH SAME AND ATTACH THEM TO THIS AMENDMENT PAGE. YOU ARE ALLOWED 30 DAYS WITHIN WHICH TO COMPLETE THE SIGNATURE PAGE AND AMENDMENT PAGE.  AFTER COMPLETING THESE PAGES, PLEASE RETURN THEM TO CAIN & CRANE COURT REPORTERS, POST OFFICE BOX 23833, CHARLOTTE, NC 28227.

IN RE:  Roxanne Dawson, et al., v. Student Loan Solutions, et al.
DEPOSITION OF:  Christopher Paul Ruh

    I, Christopher Paul Ruh, certify that I have read my deposition, which was taken on Wednesday, September 11, 2024, and request that the following changes, if any, be made:

Page_____  Line_____  Change_____

_____
Reason for Change_____

Page_____  Line_____  Change_____

_____
Reason for Change_____

Page_____  Line_____  Change_____

_____
Reason for Change_____

Page_____  Line_____  Change_____

_____
Reason for Change_____

Page_____  Line_____  Change_____

_____
Reason for Change_____

_____
Christopher Paul Ruh                    Date

S I G N A T U R E   P A G E

IN RE:  Roxanne Dawson, et al., v. Student Loan Solutions, LLC

DEPOSITION OF:  Christopher Paul Ruh

        I, Christopher Paul Ruh, do hereby certify that I have read the foregoing deposition and that the foregoing transcript is a true and correct record of my testimony, subject to the attached changes, if any, on the amendment page.

_____
Christopher Paul Ruh

        Subscribed and sworn to before me this _____ day of _____, 2024.

_____
Notary Public

My Commission Expires:

STATE OF NORTH CAROLINA       )
                              ) CERTIFICATE OF REPORTER
COUNTY OF IREDELL             )

        I, Tavi L. Fraga, Professional Court Reporter and Notary Public in and for the aforesaid county and state, do hereby certify that the foregoing pages are an accurate transcript of the Christopher Paul Ruh, which was reported by me on behalf of Plaintiffs in machine shorthand and transcribed by computer-aided transcription.

        The deponent and parties reserved the signing of the deposition by the deponent.

        I further certify that I am not financially interested in the outcome of this action, a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of such attorney or counsel.

        This 19th day of September, 2024.

        _____
        Tavi L. Fraga
        Professional Court Reporter
        Notary Public #201229000172

**$**

**$260,000** 17:22

**1**

**11** 5:1
**12,000** 8:14
**1400** 5:7
**150** 17:12
**150,000** 17:9

**2**

**20** 15:16
**200,000** 17:11,15
**2008** 8:6
**2017** 17:23
**2024** 5:1
**2:48** 5:2

**3**

**30** 5:19
**3:04** 18:25

**5**

**50** 12:10 17:12
**50,000** 17:7

**6**

**650** 5:6

**A**

**accelerate** 9:13,16
**acceleration** 14:4,10

**account** 14:3,5,9
**accounts** 14:10,13
**addition** 16:22
**additional** 17:3
**advised** 7:12
**Affairs** 6:11
**allegations** 9:25
**alleged** 11:17
**alleging** 9:23
**America** 7:19 8:14 9:20,24 10:3,10,21 11:20,25
**amortization** 8:23 9:3,6,9
**answering** 17:25 18:1,5
**apologies** 9:7
**apologize** 11:6
**approximately** 8:4,10,14
**assert** 11:11
**attorney** 7:12,15,16 15:21,24 16:2 18:5
**attorneys** 6:1
**Auto** 15:12
**aware** 12:20,24
**awful** 13:24

**B**

**bank** 7:19 8:3,14 9:20,24 10:2, 10,20 11:20,25 18:15
**based** 5:24 6:4
**basis** 6:2 17:20 18:2,4
**behalf** 5:5
**bigger** 8:13
**bring** 18:12
**buyer** 15:7

**C**

**Cadwalader** 5:6

**capacity** 5:17 10:13 15:17
**capital** 15:6 17:2,5
**cards** 15:12
**Carolina** 5:8
**cash** 16:21 17:15
**Chad** 15:15,19
**changed** 12:13,16,21
**Charlotte** 5:7
**Christopher** 5:3,11
**City** 6:10
**Civil** 5:4 6:25
**clarified** 17:1
**clarify** 16:25
**Clay** 16:9
**clear** 13:25 15:22 18:8,20
**client** 15:1
**collect** 13:14
**collected** 11:18
**collection** 9:20,23
**commencing** 5:2
**company** 7:7
**concluded** 18:24
**confused** 10:15
**Consumer** 6:11
**contract** 15:1
**contributed** 17:11
**contribution** 16:20 17:2,5
**Corporation** 8:2
**correct** 15:8,14 16:22
**counsel** 15:5,20
**counterclaims** 11:12,14
**Created** 16:1
**credit** 15:12 17:22
**current** 8:6

Cain & Crane Court Reporters
704.545.3510

**D**

David 16:13

days 13:13

debt 9:20,23 11:18 15:7

debts 15:9

Defaulted 15:12

deficiencies 15:12

demands 6:25

Department 6:10

deposed 14:1

deposition 5:2 6:3 18:24

depositions 5:18 6:1

DIRECT 5:14

directed 18:6

directing 17:18 18:7,18

disclose 7:8,10,11,12

documentation 15:2

duly 5:12

**E**

earlier 7:2

Echols 7:17 15:15,19

examination 5:14 7:4

examinations 7:3

examined 5:12

exists 6:21

expect 13:5

explain 14:25

**F**

Federal 5:4

figure 14:17,23

filed 11:2,6,8 12:14,22,25 13:5,6

filings 11:11

financial 15:10

financing 17:16

firm 7:17 15:25 16:1

foreclose 18:16

form 8:25 9:5,10 11:19,21 12:11,18,23 13:2,7,23 14:6,12,19 15:4 16:24 17:13 18:17

front 18:12

Fudge 6:10 7:3,16 8:16 9:13,16 10:9,12,13,20 11:3,12,17 13:14, 25 14:3,14 15:18,19,23 16:2,5,7, 10,15

Fudge's 14:10

funding 16:18

**G**

general 11:7

Goodyear 16:9

GRASSI 18:22

guess 10:8 11:24

**H**

handed 15:1

head 8:12,22

hours 5:19 14:2

house 18:16

**I**

idea 10:6,24 11:1 12:5

in-house 15:20 16:2

included 6:6

individual 16:21

initiated 8:16

installment 8:21 13:15 14:18 15:3

institutions 15:10

instructed 6:1

instructions 5:18

investigative 6:25

involved 6:16 14:13

Iowa 8:2,6,16 9:3,13

**J**

job 6:14

judge 18:13

**K**

kind 14:20 15:9

knowledge 5:25 6:5 10:11

**L**

law 5:5 15:25 16:1

lawsuit 9:23 12:14,22

lawsuits 8:16 10:9 11:2,5,8,16 12:25 13:5

leave 16:5

left 15:24

legal 15:5

lent 17:2,8

Liquidity 8:2

litigation 9:12 11:11

lived 17:23

LLP 5:6

loan 7:4 8:2 9:21,24 10:21 11:9, 14,17 12:14,20 13:1 14:17,18,20, 21,22 15:1,3 17:3,4,12 18:15

loans 7:19,22 8:7,10,17,19,21, 23,24 9:3,9,14,17 10:3,10 11:20, 25 13:15 15:13 16:21

long 15:15 16:9,11,13,16

Loom 15:6

Cain & Crane Court Reporters
704.545.3510

**lot** 13:24

**Love** 18:12

### M

**made** 16:20 17:1

**Mae** 8:3,6,8,19 9:9,16

**make** 18:14

**manager** 11:8

**managing** 11:7

**Meaning** 8:7

**means** 17:11

**member** 11:7 16:20 17:1,4

**members** 16:20,21 17:2

**met** 16:7

**money** 17:3 18:14

**monthly** 8:9

**move** 13:12 14:2

### N

**North** 5:7

**notice** 5:3 6:3 14:4,10

**notices** 6:6

**number** 5:16 11:16,23 13:4,5,6,8

### O

**Object** 11:21 12:11,18,23 13:2,7,23 14:6,12,19 15:4 16:24 17:13 18:17

**objected** 6:2

**Objection** 17:24

**obligations** 5:21

**obtain** 17:16

**obtained** 17:22

**October** 17:23

**offices** 5:6

### P

**p.m.** 5:2 18:25

**passive** 15:7

**past** 5:19

**patient** 13:12

**Paul** 5:3,11

**people** 17:8

**period** 6:12

**person** 10:17 17:6

**personal** 5:17,25 6:4 10:11

**personally** 9:19,22 10:1 12:15,19

**Plaintiffs** 5:5

**point** 15:24

**policies** 12:13,16,20

**portfolio** 9:12

**portfolios** 7:20

**prepare** 8:23 9:2,6,8

**president** 11:2,5

**Procedure** 5:5

**provide** 15:5

**purchase** 8:4 15:9

**purchased** 7:20 8:7

**purchases** 8:9,11

**pursuant** 5:3,4

### Q

**question** 7:2 11:22

**questions** 5:17,21,24 6:2,4 10:17 18:21,22

### R

**RANUCCI** 5:15 12:17 17:20 18:9,19

**read** 11:2,5,8,11,16 12:6 13:9,10

**reading** 18:23

**recall** 6:17 7:3 8:12,20 13:18,21,22 14:3,8,9,15

**received** 6:9,12

**receiving** 6:22

**record** 18:2,4,8,9,20

**regular** 15:11

**regulator** 7:5

**regulatory** 7:2

**relating** 10:2,10,20

**relation** 9:19

**relationship** 8:6

**relevant** 17:21,24

**remember** 6:11,13,17,18,20,22,23 10:18,19

**reopen** 18:10

**reserve** 18:11

**reserved** 18:23

**reserving** 18:10

**residence** 17:23

**respect** 6:9,18

**responding** 6:16

**response** 12:14,21

**rights** 18:12

**role** 6:18 11:2,5,7

**Ruh** 5:3,11

**Rules** 5:4

### S

**sale** 16:18

**Sallie** 8:2,6,7,19 9:9,16

**separate** 17:4

**September** 5:1

**signature** 18:23

**SLS** 7:19 8:4,7,23,24 9:2,6,8

11:24 13:15 14:4

**small**  5:16

**smaller**  8:13,15

**software**  9:2

**Solutions**  7:4 11:9,14,18 12:14,21 13:1 17:3 18:15

**South**  5:7

**started**  15:18 16:10,14,15

**Starting**  11:24

**state**  9:21

**stated**  9:11 17:8

**Street**  5:7

**student**  7:4,22 8:2 11:8,14,17 12:13,20 13:1 14:21,22 15:13 17:3 18:15

**subpoena**  6:9,19

**subpoenas**  6:23

**subsequent**  15:24

**sued**  9:19,22 10:1,9,12,20 11:24

**Suite**  5:7

**surprised**  12:25 13:3

**sworn**  5:12

---

### T

**tables**  8:23 9:3,6,9

**Taft**  5:6

**talking**  16:18

**terms**  15:11

**testified**  5:12

**things**  10:18 13:24

**time**  6:12,14

**time-barred**  9:20,23 11:18

**times**  10:5,23 13:16,19

**top**  8:12,22

**total**  17:12

**trick**  10:16

**Tru**  9:2,8

**Trust**  12:3

**Tryon**  5:7

---

### U

**Uh-huh**  12:17

**underlying**  15:2

**understand**  6:7

**understanding**  7:9 10:2

**understood**  16:19

---

### W

**Wednesday**  5:1

**Wickersham**  5:6

**Williams**  6:10 7:3,16 8:16 9:13, 16 10:9,12,13,19 11:3,12,17 13:14,24 14:3,9,13 15:18,19,23 16:2,5,7,10,13,15

**work**  15:19

**worked**  15:23 16:7

**working**  16:10,15

**works**  15:25

**worried**  18:14

---

### Y

**years**  15:16

**yesterday**  16:19 17:1

**York**  6:10