# EXHIBIT F

## Bank Of America Private Loan Credit Agreement
### No white-outs or cross-outs of terms will be accepted on this Promissory Note

Student's Name:

Student's SSN:

Co-borrower's Name:

Co-borrower's SSN:

Loan Amount Requested: $

School Code:

Deferment Period Margin = 2.75 %   Repayment Period Margin = 3.40 %

Origination Fee: 0.00 % of the sum of (i) the Origination Fee and (ii) the loan amount that is advanced to me.

In this Credit Agreement, the words "I", "me" and "my" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours" and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid Interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School. You may also increase or decrease the amount of any disbursement by one cent ($.01) to equalize the amount of disbursements.

2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me, as required by law, with an Disclosure Statement at the time of the first disbursement or a Disclosure Statement at the time of each disbursement. Each Disclosure Statement is incorporated herein by reference and made a part hereof. Each Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the

Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in each Disclosure Statement by doing either of the following: (a) endorsing or, depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of each Disclosure Statement, I will review it and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in a Disclosure Statement that covers my entire loan amount, I may cancel my loan by giving you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If I am not satisfied with the terms of my loan as disclosed in a Disclosure Statement that covers only one of multiple disbursements of my loan, to cancel the disbursement covered by that Disclosure Statement, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement and I understand that unless I withdraw from the School or I or my School specifies otherwise, the cancellation of any disbursement will not cancel any future disbursements or any previous disbursement. I understand that I must repay, in accordance with the terms of this Credit Agreement, all amount disbursed but not canceled. If loan proceeds have been disbursed, I agree that I will immediately return the canceled disbursement to you, will not endorse any check that disburses the loan proceeds to be canceled, and will instruct the School to return the canceled disbursement to you. If I give notice of cancellation but do not cause the return of the disbursement as stated above, the disbursement will not be canceled and I will be in default of the Credit Agreement. (See Paragraph I).

**C. DEFINITIONS, DEFERMENT AND BEGINNING OF REPAYMENT:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the first Disbursement Date and will end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of the Credit Agreement).

(a) *For the Bank of America GATE Undergraduate Alternative Loan Program:* I may receive up to 10 years plus 180 days total deferment, split into two periods. The first Deferment Period begins upon the first Disbursement Date and ends 180 days after I graduate from the School or another approved School, complete a joint degree program, or cease to be continuously enrolled at least half-time prior to graduation. The first Deferment Period can be no more than 5 years plus 180 days and the Deferment End Date shall be that last day of the first Deferment Period. I will be eligible for a second Deferment Period of up to five (5) years ("Additional Deferment") as long as enrolled to complete an undergraduate or graduate degree (at an approved school) or begin a medical internship or residency program. During the first Deferment Period, the Servicer may treat any notice of a revised graduation date or of new enrollment as my request for Additional Deferment. You may capitalize (see Paragraph D.3)

BK.05-06.CSX1.10SC.0105

accrued and unpaid interest as of the end of each Deferment Period. All such capitalized interest shall be repaid with the principal balance.

(b) *For the Bank of America GATE Graduate Professional Education Alternative Loan Programs:* The Deferment End Date shall be the earlier of (a) 4½ years from the first Disbursement Date, or (b) 180 days after the day I graduate or 180 days after the day I cease to be enrolled at least half-time at a school participating in this Loan Program; provided, however, that if I begin a medical residency or internship, the Deferment Period will then end 180 days after the residency or internship ends, but no later than 8 years plus 180 days after the first Disbursement Date (to be included within my deferment period, the internship or residency must be a licensure requirement and a maximum of 4 years).

3. The "Repayment Period" begins the day after my first Deferment Period ends. The Repayment Period is 20 years (25 years for loans with a Principal Sum of $40,000 or more) unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years. Additional Deferment will not extend the Repayment Period.

## D. INTEREST:

1. Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. During any period of Additional Deferment (see Paragraph C.2), the Margin will be the percentage shown for the Repayment Period on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal.* The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize

BK.05-06.CSX1.10SC.0105

interest") as of the last day of any Deferment Period and at the end of any forbearance period. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

## E.  TERMS OF REPAYMENT:

1. Deferment Period – You will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under the Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional

amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges – If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the principal Sum (Loan Origination Fee plus loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire Principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement , (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and

BK.05-06.CSX1.10SC.0105

increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.

**L. ADDITIONAL AGREEMENTS:**

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by the Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU

SLS 628

PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to the Borrower and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement. If in the future I apply for a loan that is guaranteed by TERI and funded by another lender, I also authorize the sharing of application information for this loan (other than information in a consumer report) with the other lender and TERI and the reuse of such information by such new lender and TERI in my new application.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person; (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

18. The Cosigner may be released from all obligations hereunder if (a) the Lender (or its agent) receives full payment for each of the first 48 consecutive principal and interest payments on or before their respective due dates under this Credit Agreement, (b) the Cosigner makes a request for such release to the Lender (or its agent) within ninety (90) days of making the 48th such payment, and (c) the Borrower meets the Lender's and TERI's credit criteria then in effect for cosigner release under this Credit Agreement.

M. DISCLOSURE NOTICES:

BK.05-06.CSX1.10SC.0105

ALL APPLICANTS:
IMPORTANT FEDERAL LAW NOTICE—

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of California, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in the Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, and Income Contingent Loan, a Federal

BK.05-06.CSXI.10SC.0105

Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:

NOTICE: You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT(S) YOU MAY HAVE TO PAY

Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.

Name of Creditor: Bank of America, National Association, and its successors and assigns.

Date: If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.

Kind of Debt: Education loan.

Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.

FOR OBLIGORS COSIGNING IN VERMONT:

NOTICE TO COSIGNER

YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

FOR OBLIGORS COSIGNING IN WEST VIRGINIA:

NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

BK.05-06.CSX1.10SC.0105

## Credit Agreement – Signature Page

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all seven (7) pages of this Credit Agreement BK.05-06.CSX1.10SC.0105 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on nor to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

## FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley):**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE PREVIOUS PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Signature of Borrower_____                    _____      Date_____

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner_____      Date_____

Social Security Number of Student / Borrower _____

BK.05-06.CSX1.10SC.0105

In this Note and Disclosure Statement, the words "I," "me," or "mine" refer to Borrower and Cosigner named on the first page of this Note. The term "you," or "Lender" refers to Bank of America, N.A. and any subsequent holder of this Note. The term "Servicer" refers to any person authorized by Lender to be responsible for collecting payments and making computations relating to this Note. The term "GATE Note" and "Note" shall mean this Note, which evidences a loan to me under the Guaranteed Access to Education loan program. The proceeds of this Note will be used by Borrower to purchase educational services (including tuition, housing expenses and related expenses) from the Educational Institution.

Application/Future Disbursements

I understand that this is an application and that you are not obligated to loan money unless: (a) you approve this application, and (b) the Educational Institution verifies my disbursement dates, enrollment and maximum loan amount. My loan will be disbursed directly to the Educational Institution shown above on or about disbursement dates shown in my Disclosure (see Section 1(b)). If an Origination Fee percentage is shown on the first page of this Note, then an origination fee will be added to each disbursement and included in the principal amount of my loan. The total amount of all fees added to disbursements will equal the Prepaid Finance Charge shown in my Disclosure. A pro rata share of the total fee is added to each disbursement. (For example, if I have two equal loan disbursements, half of the total fee will be added to each disbursement.)

### 1. Promise to Pay.

**(a) Borrower's Promise.** In return for the loan that I have received or will receive, I promise to pay the sum of all amounts borrowed under this Note, including, without limitation, amounts disbursed to the Educational Institution plus a prepaid finance charge computed by multiplying the amount credited to my account times the Origination Fee percentage shown on the first page of this Note, to Lender, or order, together with interest at the Variable Rate described below until paid in full. The amount credited to my account plus the prepaid finance charge is sometimes called the "Principal Sum" in this Note. I will make my payments in accordance with the rules set forth below. I will also pay all late charges, reasonable attorneys' fees and other costs necessary for collection of any amount not paid when due, including without limitation reasonable collection agency costs. Interest on this Note shall accrue on each disbursement from the date made on a daily basis and shall be calculated on the basis of a year of 365 or 366 days, as appropriate, for the actual number of days elapsed. Payments on this Note shall be made at the location directed by Servicer or, in the absence of such direction, to the address set forth at the end of this Note. If not sooner paid, the entire Principal Sum remaining unpaid, and all accrued interest and any other amounts outstanding hereunder, shall be due and payable in full on the Maturity Date (as defined in Section 2(a)). All payments must be made in U.S. dollars.

**(b) Disbursement Procedure.** The amounts I will repay under this Note include disbursements made and to be made to the Educational Institution for each semester, term or regular period when tuition and fees are due to the Educational Institution. Lender will verify scheduled disbursements with the Educational Institution and make disbursements in accordance with its requirements. Prior to the date of the first disbursement, Lender will send me a disclosure, setting forth the amount and scheduled disbursement dates of all disbursements, the applicable annual percentage rate, the amount of Origination Fees to be added to my loan amount, and other disclosures required by law (the "Disclosure"). I may elect not to consummate this loan transaction by notifying the Servicer, as agent for the Lender any time up to 14 days after the date of the first disbursement. If I do not notify the Servicer within this time frame, I will be bound by the terms of this Note and the Disclosure. If I choose not to consummate this loan transaction, I will have no obligation under this Note, and all disbursements under this Note will be cancelled. If the first disbursement has already been made to the Educational Institution, I agree that a refund of the disbursed amount shall be paid directly to the Servicer, on behalf of the Lender. If I cease to be Enrolled (as defined in Section 2(f)) at the Educational Institution, any future disbursements will be cancelled.

### 2. Payments on this Note.

**(a) Principal and Interest Payments.** Payments of principal and interest shall become due monthly, starting eight calendar months following the date I cease to be Enrolled at an Eligible Institution (see Section 2(f)) as reported by the National Clearing House or the Eligible Institution, but no longer than five (5) years plus eight (8) calendar months after the first disbursement date (the "First Payment Due Date"). Subject to a minimum monthly payment of $10.00, principal and interest shall be repaid in monthly installments in an amount that will pay all principal and interest in full by a date that is 239 months after the First Payment Due Date (the "Maturity Date"). After each Quarterly Change Date (as defined in Section 2(d)) the amount of my monthly payment will be recomputed to an amount that will pay my loan in full by the Maturity Date at the new interest rate. If I cease to be Enrolled at an Eligible Institution (as defined in Section 2(f)), whether on account of graduation, withdrawal, or otherwise, then monthly payments will be due eight calendar months after I cease to be Enrolled. I may also give the Servicer written notice that I wish to start making payments before the First Payment Due Date, in which case my monthly payments will begin eight calendar months after I give such a notice to Servicer. The Servicer may reasonably establish a First Payment Due Date other than those provided above for the convenience of the Servicer in processing payments, in the event that notice of events described above is not timely received by the Servicer, or in order to coordinate the due dates of all of the Borrower's student loans processed by the Servicer. In no event will Servicer advance the First Payment Due Date by more than 45 days. Borrower may also request a regular monthly due date other than the date assigned by the Servicer, subject to approval by Servicer. Servicer will report accrued and unpaid interest to Borrower prior to capitalization.

**(b) Additional Payment Deferrals.** Borrower may request, in writing, further deferral of the payments due pursuant to Section 2(a) on account of enrollment in (1) undergraduate or graduate studies duly certified to Servicer by an Eligible Institution or (2) a medical internship or residency, but the total period of such further deferral may not exceed 60 months in the aggregate. Servicer may treat any notice of a revised graduation date or of new graduate enrollment (including, without limitation, notice of enrolled status from any nationally recognized financial aid information system) as such a written request for deferral. Any such further deferral of payments shall be subject to the approval of Lender in its sole and absolute discretion. Interest payments that are deferred pursuant to this Section 2(b) shall be added to the principal balance when deferment ends under the next sentence, to the extent permitted by law, and such capitalized interest shall be repaid with other principal balances under the schedule set forth below. Deferment pursuant to this Section 2(b) shall cease and monthly payments become due 30-45 days after such enrollment ceases. After any deferment, the amount of my monthly payment will be recomputed to an amount that will pay my loan in full by the Maturity Date at the interest rate then in effect.

**(c) Interest Accrual and Capitalization.** Interest on this Note shall accrue from the date of each disbursement and shall be added to the Principal Sum when repayment begins, and such capitalized interest shall be repaid with other principal balances. If the holder

B-2

*Lender Copy -- Return to AES*

of this Note reasonably determines that accrued interest may not, under applicable law, be added to the principal balance and bear interest other principal as provided in this Section 2, then Borrower shall be obligated to pay all accrued interest and shall have the option, when inter payments first come due hereunder, of (i) paying all interest that has accrued on the Principal Sum to such date in cash, or (ii) consolidating accrued interest pursuant to a consolidation note payable to such holder at the same rate of interest and over the same term as this Note, (iii) executing such other documents as are necessary under applicable law to add accrued interest to principal. If Borrower fails to execut consolidation note upon request, or other necessary documents, all accrued interest shall be due and payable.

**(d)  Variable Rate.**  For disbursements occurring before the next Quarterly Change Date, my interest rate will start at Initial Rate shown on the first page of this Note.  The interest I must pay on all disbursements will equal the "Variable Rate", determined follows. The Variable Rate shall equal the sum of the Index (as defined below) and the Margin (shown on the front of this Note). The rate change on the first day of each calendar quarter, being the first day of January, April, July and October (the "Quarterly Change Date"), to eq the sum of the current Index and the Margin rounded to the nearest one hundredth percent (.01%). Lender will determine the current In value on each Quarterly Change Date. The current Index value is equal to the average of the one-month London Interbank Offered Ra ("LIBOR") as published in The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding Quarterly Change Date (the "Average LIBOR Rate"). Lender may use the one-month LIBOR rates reported in the Wall Street Journal during s period, or may rely on any other reliable published source of LIBOR rates. In the event that the information used to calculate the Index is longer publicly available, Lender may substitute another index based on comparable information regarding Eurodollar deposits.

Any change in my Variable Rate will change the amount of interest earned on my loan. After the First Payment Due Date, it will also change the amount of my monthly payments. The Servicer will tell me my new payment amount before it is due.

Under no circumstances will the amount I pay for interest and other expenses exceed an amount equivalent to 23% per annum, computed in accordance with applicable law.

**(e)  Crediting of Payments.**  Payments received on this Note shall be allocated in the following order: (i) to accru interest, (ii) to late charges and expenses of Lender in connection with collecting past due amounts, if any, and (iii) to outstanding princip provided however, that no otherwise timely payments shall be deemed late solely because Borrower owes a late fee with respect to a pr payment.

**(f)  Definition of "Eligible Institution"; "Enrollment"**  For purposes of this Note, Borrower shall be "enrolled" a: student if pursuing at least a half-time course of study.  For certain graduate students, "enrollment" may include less than half-time study, the extent provided in the GATE Loan Program Manual. Borrower's status as a half-time student shall be determined by the Education Institution, in its sole discretion.  Borrower authorizes Lender to obtain such information regarding Borrower's enrollment status and Lender m request and directs all persons to deliver such information to Lender without any further authorization from Borrower. For the purpose determining enrollment status and eligibility for deferment, an Eligible Institution shall be one that is eligible to participate in student lo programs guaranteed by the United States Department of Education.

**(g)  Statements; Combined.**  Borrower will receive a monthly statement or periodic coupon booklet indicating the amou of the monthly installments due on this Note.  Failure to receive a monthly statement or periodic coupon book does not relieve Borrower Cosigner of the responsibility and obligation of making the required principal and interest payments in accordance with the terms and conditio of this Note. IF  Borrower has additional notes payable to the holder, Servicer may combine the payments due under this Note with t payments due under Borrower's additional Notes; however, any partial payments will be allocated among this Note and Borrower's addition notes on the basis of the principal amounts then outstanding.

**3.  Prepayment.**  Borrower and Cosigner may prepay this Note, in whole or in part, at any time, without penalty, b prepayment will not entitle me to a refund of any prepaid finance charge.  Any prepayment of principal shall be applied to eliminate month payments in the order of maturity (i.e., credited to the next principal payment first).  This means that the Servicer may provide "paid ahea status (i.e., deferring the due date on payments totaling an amount equal to the amount prepaid) to Borrowers who do not indicate they wish continue payments without such deferral. Servicer shall provide monthly statements regardless of whether or not a Borrower is in "paid ahea status.

**4.  Representations.**  Borrower and Cosigner represent that Borrower is a student at the Educational Institution and that t proceeds of this Note will be used solely for educational purposes.  Borrower and Cosigner acknowledge that they have received a copy of t Note, with all blank spaces completed.  Borrower shall promptly notify Servicer or such other person as Lender directs, in writing, of any chan of name or address of Borrower, and any transfer, withdrawal or graduation from, or loss of enrolled status at, the Eligible Institution at whi Borrower had been enrolled.  Cosigner shall promptly notify Servicer or such other person or entity as Lender directs, in writing, of any chan in Cosigner's name or address.  If any provision hereof shall be held invalid or unenforceable, such provision shall be severable herefrom a shall be deemed omitted herefrom without affecting the validity or enforceability of the remainder of the Note.  No term or provision of this No may be changed unless consented to in writing by the Lender.  The terms and conditions contained herein apply to and bind the successors a assigns of Lender.  Lender is authorized to sell or otherwise assign this Note to any other party through one or more transfers or assignment Borrower hereby authorizes Lender, without further notice, to obtain the signature of Cosigner, if required by Lender.  Borrower and a Cosigner authorize Lender, without further notice, to correct any patent errors herein.  Borrower and Cosigner signing this Note shall be joint and severally liable hereunder.  If the name of a Cosigner does not appear above, all reference herein to Cosigner shall be deemed omitte Cosigner agrees that Lender may, without consent of Cosigner, agree from time to time to extend the time for payment or otherwise gra accommodations to Borrower and that no such extension of time for payment or other accommodation shall in any way release or affe Cosigner's obligations hereunder.

**5.  Late Charge.**  If any monthly payment on this Note is not paid within 10 days of the due date in accordance with its term Servicer (on behalf of Lender) may charge, and Borrower and Cosigner will pay, a late charge equal to 5% of the monthly payment amount $10.00, whichever is less.  In addition, interest at the rate set forth above shall accrue on overdue payments to the extent permitted by law.

**6.  Default and Acceleration.**  The entire outstanding balance and any interest accrued hereon shall become immediately du and payable at the option of Lender, without notice or demand, together with all costs of collection and reasonable attorneys' fees, if Borrow and Cosigner shall be in default.  Borrower and Cosigner shall be in default if any one of the following events occur: (a) A scheduled payment not made within 30 days of the scheduled payment date on this loan.  (b)(i) Borrower dies (and there is not a Cosigner), Borrower

adjudicated incompetent, voluntary or involuntary bankruptcy proceedings are instituted by or against Borrower, or Borrower makes an assignment for the benefit of creditors, or (ii) any one of these events occurs, but in respect of Cosigner.  (c) Any statement or representation on Borrower's or Cosigner's application for the loan evidenced by this Note is materially untrue, incorrect or incomplete.  (d) Borrower (or upon failure of Borrower, Cosigner, if any) fails to perform any other agreement contained in this Note.  (e) Borrower fails to promptly notify Servicer, or such other person as Lender directs, in writing, of (i) any change of Borrower's name or address, or (ii) Borrower's transfer, withdrawal or early graduation from, or loss of enrolled status at, the Eligible Institution at which Borrower has been enrolled.  (f) Cosigner fails to promptly notify Servicer, or such other person as Lender directs, in writing, of any changes of Cosigner's name and address.  Notice is deemed prompt if received within 10 days of the above-mentioned change.

Acceptance of any payment, in whole or in part, of amounts in arrears shall not waive or affect any prior acceleration of this Note.  Borrower and Cosigner hereby jointly and severally waive notice of dishonor, notice of protest, presentment, demand for payment and all other notices or demands in the event of default on this Note and agree to consent to any and all extensions, renewals or release of any party liable upon this Note or waiver and modification that may be granted by Lender, all without affecting or releasing Borrower or Cosigner from this Note.

Borrower and Cosigner agree to pay Lender immediately upon request all of its costs and expenses, including without limitation reasonable attorneys' fees and court costs and reasonable collection agency costs in enforcing this Note to the extent not prohibited by applicable law. The holder of this Note may capitalize (add to principal) any accrued, unpaid interest at the time of default and acceleration of this Note.

**7. Credit Bureau Information and Notification.**

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

Borrower and Cosigner hereby authorize Lender and any subsequent holder of this Note to obtain reports as deemed necessary or appropriate by them from one or more credit bureaus in connection with Borrower's and Cosigner's application for this loan and/or collection of amounts due under this Note.  Borrower and Cosigner hereby authorize lender and any subsequent holder to release to the Educational Institution and to lender and its agents, including Servicer, and to The First Marblehead Corporation, information concerning the status of Borrower's loan and any information from the Educational Institution, any credit bureau or other agency which Servicer deems necessary or desirable to the performance of its duties.

Information concerning the amount of this Note and its repayment will be reported to one or more credit bureaus.

If Borrower and/or Cosigner default on this Note, Lender or holder will also report the default to the Educational Institution, to the agents of Lender, and to the credit bureau(s).  Such a report may significantly and adversely affect Borrower's and/or Cosigner's ability to obtain other credit.

**8. Loan Charges.** If this Note is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Note exceed permitted limits:  (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under this Note or by making a direct payment to Borrower.  If a refund reduced principal, the reduction will be treated as a partial prepayment.  Borrower and Cosigner agree that the rate of interest pursuant to the Note includes the rate described herein and any other costs, fees and other amounts to the extent that such amounts are deemed to be interest under applicable law.

**9. GOVERNING LAW. THIS NOTE SHALL BE GOVERNED BY THE LAW OF THE STATE OF CALIFORNIA (INCLUDING, WITHOUT LIMITATION, THE LAWS OF CALIFORNIA REGARDING INTEREST AND OTHER CHARGES THAT MAY BE MADE ON THIS NOTE AND THE LAWS OF CALIFORNIA PERMITTING COMPOUNDING OF INTEREST AS CONTEMPLATED BY THIS NOTE).**

10.  If I fax my signature(s) on the first page of this Note back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Note.  You and I agree that all copies of this Note (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

11.  If any Borrower or Cosigner elects to sign electronically an electronic record of this Note, then the following will apply as between Lender and such person:  (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.  If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original.  However, the electronic signature of another party to this Note and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

> **ALL APPLICANTS:**
> **IMPORTANT FEDERAL LAW NOTICE—**
> *Important information about procedures for opening a new account:*
> To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
> *What this means for you:*

B-4

BA.06-07.UNGT.10.0306                                    *Lender Copy – Return to AES*

[W0321116.9]

SLS 635

When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR C( ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Address for Payments:  Until notified otherwise, I should make my payments to: AES Loan Servicing, Harrisburg, PA 17130-0001   Phone:  (800) 233-0557

B-5

{W0321116.9}    BA.06-07.UNGT.10.0306                               *Lender Copy – Return to AES*

SLS 636

| | **Bank of America ISLP Medical Loan Program**<br>**Loan Request/Credit Agreement Instructions** |
|---|---|

You have been conditionally approved for a Bank of America Alternative Education Loan.  Attached is your Loan Request/Credit Agreement.  Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document**
**Urgent Reply Requested**

**Please follow the instructions on the following page to complete your application.  Be sure to include your <u>Loan ID#</u> and/or <u>SSN#</u> on <u>ALL</u> correspondence.**

**Your Loan ID# is located in the footer of this page. It is the eight digit number following "A1".**

**Once Completed – <u>RETURN all paperwork signed with a pen and all requested documents.</u>**

- For faster loan processing, fax all documents to **[_____]**.

- Return all information by mail to the address below.

  | **For regular delivery, send to:** | **For overnight delivery, send to:** |
  |---|---|
  | [_____] | [_____] |
  | P.O. Box 848108 | One Cabot Road, Second Floor |
  | Boston, MA  02284-8108 | Medford, MA  02155-5141 |

**Frequently Asked Questions:**

1. **Q: What could cause my loan to be delayed?**
   **A:** The most common delays are caused by illegible or incomplete documentation. Please review the instructions on the following page to ensure fast processing.
2. **Q: How can I check the status of my loan and confirm the disbursement date of my funds?**
   **A:** You can check the status of your loan and confirm the disbursement date at anytime. Simply visit us online at [_____] or call us at [_____].

**Applications not completed within 90 days will be considered withdrawn.**
Before returning this Credit Agreement, read the entire document and sign and date the Signature Page where indicated.

{W0746322.1}**BK.07-08.CRRD.10MED.0207**

# Credit Agreement Instructions Checklist

*(For your reference only; you do not need to return this checklist)*

| | |
|---|---|
| **Step 1:**<br><br>☐<br><sub>Check Box</sub> | **REVIEW all pre-printed information, complete and SIGN the Credit Agreement**<br><br>• If all of the pre-printed information is correct, then you may have the option to sign your Credit Agreement electronically by following the instructions provided to you electronically.<br><br>• If you find any incorrect information, please correct the information and <u>initial the change(s)</u>.  Please note that certain changes may require the issuance of a new Credit Agreement for signature. No changes may be made if you sign your Credit Agreement electronically.<br><br>• <u>**Legibly sign and date**</u> by hand the bottom of the Signature Page of the Credit Agreement.  Your signature must match the name pre-printed on the Credit Agreement.<br><br>• If you have made an error on the signature or date lines, either download another copy or contact us as you will need to complete a new Credit Agreement. |
| **Step 2:**<br><br>☐<br><sub>Check Box</sub> | **ATTACH proof of immigration status (for eligible non-U.S. citizens only)**<br><br>• <u>If the Borrower is an eligible non-citizen</u>, the Borrower must provide a current Resident Alien Card, Form I-551 (i.e., Green Card) showing that the Borrower is a permanent resident alien of the United States. |
| **Step 3:**<br><br>☐<br><sub>Check Box</sub> | **ATTACH other required information**<br><br>• <u>If this loan is for a past due balance</u>, please submit a current invoice (less than 60 days old) indicating the name of the school, the name of the student, and the dates of and the amount owed for the specific academic period. |

**If you have questions, please have your Loan ID# available and call:**
[_____]

{W0746322.1}**BK.07-08.CRRD.10MED.0207**

SLS 637

SLS 638

| *Creditready Student*     Loan Request/Credit Agreement – Signature Page |
|---|

**NON-NEGOTIABLE LOAN REQUEST/CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

| **LOAN PROGRAM INFORMATION** | |
|---|---|
| Loan Program:  Bank of America ISLP Medical Loan Program | |
| Lender: Bank of America, National Association | School: |
| Loan Amount Requested: | Academic Period: |
| Deferral Period Margin: | Repayment Period Margin: |
| Disbursement Loan Origination Fee Percentage: | Repayment Loan Origination Fee Percentage: |

**BORROWER INFORMATION (Must be age of majority in state of residence)**

Borrower Name:             Home Address:
Social Security #:            Date of Birth:                    Home Telephone:
Mobile Telephone:          E-mail Address:

Student Citizenship (check one box):     ☐ U.S. Citizen         ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name:_____    Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement BK.07-08.CRRD.10MED.0207 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature on this Credit Agreement and any related notices that require signature.  If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend: (i) my fax to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**For purposes of the following notices, "you" means the Borrower, not the Lender.**

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:  (a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.**
**(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

| **PLEASE SIGN BELOW – RETURN This Page With Other Information (if applicable) — FAX TO:** |
|---|

Signature of Borrower_____      Date_____

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who SLS 639 signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A.  PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B.  IMPORTANT – READ THIS CAREFULLY:**

1.  When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested.  I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.

2.  **HOW I AGREE TO THE TERMS OF THIS LOAN.**  By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement.  If you approve this request and agree to make this loan, you will notify me in writing and provide me, as required by law, with either a Master Disclosure Statement that shows all disbursements for my loan or a Disclosure Statement with each disbursement.  Either type of Disclosure Statement will show me the amount of the disbursement you have approved, the amount of the Loan Origination Fee, the APR and other important information.  I should carefully review each Disclosure Statement as soon as I receive it.  If I am not satisfied, I can cancel the disbursement shown on the Disclosure Statement (or the entire loan, if I received a Master Disclosure Statement).  I must cancel in writing, within ten (10) days after I receive the Disclosure Statement.  I should also call the toll free number in the instructions that came with this Credit Agreement.  If I want to cancel, I must not endorse or deposit any loan check you have sent to me.  Doing so finally accepts my loan.  If you have already sent my loan funds directly to the School, I must instruct the School to return the funds.  You will be responsible for collecting those funds from the School, and my cancellation will be effective even if the School refuses to return the loan funds to you.  If I cancel after receiving a Master Disclosure Statement, I cancel all disbursements.  Otherwise, I am canceling only the disbursement shown on the individual Disclosure Statement, and all other disbursements will continue.  I cannot cancel a disbursement after the ten (10) day review period ends.  If I do not act to cancel after receiving a Disclosure Statement, or if I endorse or deposit a loan check, I am acknowledging receipt of the Disclosure Statement and agreeing to the terms in it.  I must repay, in accordance with the terms of this Credit Agreement, any amounts disbursed but not cancelled.  If I try to cancel but do not return loan proceeds you sent to me, I will be in default under this Credit Agreement.

**C.  DEFINITIONS:**

1.  "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement):

(a) *ISLP Medical Loan Program*: 270 days after the Student ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6¾ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10¾ years after the first Disbursement Date.

(b) *ISLP Residency Loan Program*:  270 days after the Student ceases for any reason to be enrolled in a medical residency or internship, but no more than 4¾ years after the first Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D.  INTEREST:**

1.  Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3.  During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis.  The daily interest rate will

be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2.  Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes.  The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth of one percent (0.01%).  If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on any of these dates, then the Current Index will be determined by using the immediately preceding published Current Index for such date. If the Current Index is no longer available, you will choose a comparable index.

3.  Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period and at the end of any forbearance period.  In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

**E.  TERMS OF REPAYMENT:**

1.  Deferment Period – You may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan).  Statements will be sent to the address shown on your records. I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2.  Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins.  During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge.  If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3.  Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date.  I understand that during the Repayment Period the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4.  Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest.  If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5.  Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6.  Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less.  To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F.  LOAN ORIGINATION FEE:** If you charge me, I will pay you a Disbursement Loan Origination Fee at the time my loan is disbursed and a Repayment Loan Origination Fee at the time my loan enters the Repayment Period (each of such fees, a "Loan

Origination Fee"). The dollar amount of the Disbursement Loan Origination Fee will be determined by multiplying the Principal Sum times the Disbursement Loan Origination Fee Percentage shown on the first page of this Credit Agreement. For the Disbursement Loan Origination Fee, the percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 9% on the entire principal amount would equal 9.8901% of the amount advanced. The Disbursement Loan Origination Fee I will pay will be shown on my Disclosure Statement and included with the Principal Sum. The dollar amount of the Repayment Loan Origination Fee will be determined by multiplying the outstanding principal balance (including capitalized interest as provided in Paragraph D.3) on the first day of the Repayment Period, times the Repayment Loan Origination Fee Percentage shown on the first page of this Credit Agreement, and will be added to the balance of my loan on the first day of the Repayment Period. To the extent permitted by law, and unless I timely cancel a disbursement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee relating to that disbursement.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance, and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**
1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K. INFORMATION:**
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).
3. CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally-identifiable information about me (such as my Social Security Number and my Loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, in accordance with applicable law.

**L. ADDITIONAL AGREEMENTS:**
1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights under this Credit Agreement on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by

applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11**. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.**

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

**M. DISCLOSURE NOTICES**

> **ALL APPLICANTS:**
> **IMPORTANT FEDERAL LAW NOTICE—**
>
> *Important information about procedures for opening a new account:*
> **To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**
>
> *What this means for you:*

**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

SLS 641

If the School is considered to be a business subject to the Federal Trade Commission rules, then the following notice applies to me:

NOTICE

ANY HOLDER OF THIS CREDIT AGREEMENT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH I COULD ASSERT AGAINST THE SCHOOL FOR THE SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY ME SHALL NOT EXCEED AMOUNTS PAID BY ME HEREUNDER.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA, KANSAS, AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (Borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. THE LEGAL AGE FOR ENTERING INTO CONTRACTS IS 18 YEARS OF AGE IN EVERY STATE IN THE UNITED STATES EXCEPT THE FOLLOWING: ALABAMA AND NEBRASKA 19 YEARS OLD, AND MISSISSIPPI AND PUERTO RICO 21 YEARS OLD. I CERTIFY THAT I MEET THESE STATE AGE REQUIREMENTS.

**By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.**

{W0746322.1}**BK.07-08.CRRD.10MED.0207**

4 of 4

## Bank of America Loan Request/Credit Agreement Instructions

SLS 642

You have been conditionally approved for a Bank of America Alternative Education Loan.  Attached is your Loan Request/Credit Agreement.  Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document**
**Urgent Reply Requested**

**Please follow the instructions on the following page to complete your application.  Be sure to include your <u>Loan ID#</u> and/or <u>SSN#</u> on <u>ALL</u> correspondence.**

**Your Loan ID# is located in the footer of this page. It is the eight digit number following "A1".**

**<u>Once Completed – RETURN all paperwork signed with a pen and all requested documents.</u>**

- For faster loan processing, fax all documents to **[_____]**.

- Return all information by mail to the address below.

**<u>For regular delivery, send to</u>:**
[_____]
P.O. Box 848108
Boston, MA  02284-8108

**<u>For overnight delivery, send to</u>:**
[_____]
One Cabot Road, Second Floor
Medford, MA  02155-5141

**Frequently Asked Questions:**

1. **Q:  What could cause my loan to be delayed?**
   **A:**  The most common delays are caused by unacceptable or incomplete <u>proof of income</u> as described in step 2 on the following page.
2. **Q:  How can I check the status of my loan and confirm the disbursement date of my funds?**
   **A:**  You can check the status of your loan and confirm the disbursement date at anytime.  Simply visit us online at [_____] or call us at [_____].

**Applications not completed within 90 days will be considered withdrawn.**
Before returning this Credit Agreement, read the entire document and sign and date the Signature Page where indicated.

# Credit Agreement Instructions Checklist
SLS 643

*(For your reference only; you do not need to return this checklist)*

| | |
|---|---|
| **Step 1:** | **REVIEW all pre-printed information, complete and SIGN the Credit Agreement** |
| ☐ Check Box | • If all of the pre-printed information is correct, then you may have the option to sign your Credit Agreement electronically by following the instructions provided to you electronically.<br><br>• If you find any incorrect information, please correct the information and <u>initial the change</u>. Please note that certain changes may require the issuance of a new Credit Agreement for signature. No changes may be made if you sign your Credit Agreement electronically.<br><br>• **<u>Legibly sign and date</u>** by hand the bottom of the Signature Page of the Credit Agreement. Your signature must match the name pre-printed on the Credit Agreement.<br><br>• If you have made an error on the signature or date lines, either download another copy or contact us as you will need to complete a new Credit Agreement. |

| | |
|---|---|
| **Step 2:** | **ATTACH proof of income** |
| ☐ Check Box | • <u>For wage earners:</u> Provide **one** of the following documents: |

| **1.** Legible copy of your current paystub that shows the following: | | **2.** Signed letter from your employer that shows the following: |
|---|:---:|---|
| • Dated within the last 60 days<br>• Employer Name<br>• Employee Name<br>• Year-to-date earnings or date of hire | **OR** | • Dated within the last 60 days<br>• Employer Name and letterhead<br>• Employee Name<br>• Year-to-date earnings or annual salary<br>• Employee's hire date |

• <u>For self-employed individuals:</u> Provide your complete federal tax returns (1040's) for the last 2 years, including all schedules and signatures (or IRS receipt confirmation for electronically filed returns).

• <u>For retired individuals:</u> Provide your pension statement (1099) or Social Security Statement (1099) for the last year or a current year award letter showing pension or retirement income.

• <u>For individuals relying on alimony or child support payments to repay this loan:</u> Provide a complete copy of the divorce decree and a signed copy of your federal tax return (1040's) for the past two years.

| | |
|---|---|
| **Step 3:** | **ATTACH proof of immigration status (for eligible non-U.S. citizens only)** |
| ☐ Check Box | • <u>If the Borrower is an eligible non-citizen</u>, the Borrower must provide a current Resident Alien Card, Form I-551 (i.e., Green Card) showing that the Borrower is a permanent resident alien of the United States. |

| | |
|---|---|
| **Step 4:** | **ATTACH other required information** |
| ☐ Check Box | • <u>If this loan is for a past due balance</u>, please submit a current invoice (less than 60 days old) indicating the name of the school, the name of the student, and the dates of and the amount owed for the specific academic period. |

**If you have questions, please have your Loan ID# available and call:**
[_____]

{W0726005.1}**BK.07-08.CRWO.10SC.1106**

SLS 644

| * *Creditworthy Student* *    Loan Request/Credit Agreement – Signature Page |
|---|

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

| **LOAN PROGRAM INFORMATION** |
|---|

Loan Program:                                                 Academic Period:

Lender: Bank of America, National Association          School:

Loan Amount Requested:              Repayment Option:

Deferral Period Margin:          Repayment Period Margin:          Loan Origination Fee Percentage:

| **BORROWER INFORMATION (Must be age of majority in state of residence)** |
|---|

Borrower Name:                        Home Address:
Social Security #:                       Date of Birth:                    Home Telephone:
Mobile Telephone:                      E-mail Address:
Current Employer:                                                         Employer Telephone:
Current Position:                        Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.**

Student Citizenship (check one box):      ☐ U.S. Citizen            ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name:_____          Reference Home Tel #:_____          Work Tel #:_____
Reference  Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement BK.07-08.CRWO.10SC.1106 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment.  This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature.  If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

For purposes of the following notices, "you" means the Borrower, not the Lender.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
**(a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.**
**(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

| **PLEASE SIGN BELOW – <u>RETURN</u> This Page With Proof of Income and Other Information (if applicable)** |
|---|
| **FAX TO:** |

Signature of Borrower_____          Date_____

{W0726005.1}**BK.07-08.CRWO.10SC.1106**          1 of 5

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

SLS 645

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me, as required by law, with either a Master Disclosure Statement that shows all disbursements for my loan or a Disclosure Statement with each disbursement. Either type of Disclosure Statement will show me the amount of the disbursement you have approved, the amount of the Loan Origination Fee, the APR and other important information. I should carefully review each Disclosure Statement as soon as I receive it. **If I am not satisfied, I can cancel the disbursement shown on the Disclosure Statement (or the entire loan, if I received a Master Disclosure Statement). I must cancel in writing, within ten (10) days after I receive the Disclosure Statement.** I should also call the toll free number in the instructions that came with this Credit Agreement. If I want to cancel, I must not endorse or deposit any loan check you have sent to me. Doing so finally accepts my loan. If you have already sent my loan funds directly to the School, I must instruct the School to return the funds. You will be responsible for collecting those funds from the School, and my cancellation will be effective even if the School refuses to return the loan funds to you. If I cancel after receiving a Master Disclosure Statement, I cancel all disbursements. Otherwise, I am canceling only the disbursement shown on the individual Disclosure Statement, and all other disbursements will continue. I cannot cancel a disbursement after the ten (10) day review period ends. If I do not act to cancel after receiving a Disclosure Statement, or if I endorse or deposit a loan check, I am acknowledging receipt of the Disclosure Statement and agreeing to the terms in it. I must repay, in accordance with the terms of this Credit Agreement, any amounts disbursed but not cancelled. If I try to cancel but do not return loan proceeds you sent to me, I will be in default under this Credit Agreement.

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the first Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the final disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable

repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the first disbursement of my loan, the "Deferment End Date" will be the date the Student first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the first Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the Student first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the first Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5 ½- year maximum. Regardless of the repayment option I chose and after the Deferment End Date, this loan may be eligible upon written request for deferment periods of up to five (5) years total ("Additional Deferment") as long as the Borrower is enrolled at least half time to complete an undergraduate or graduate degree (at a school participating in this loan program) or begins a medical internship or residency program. The Servicer may treat any notice of a revised graduation date or of new enrollment as my written request for Additional Deferment. You will capitalize (see Paragraph D.3) accrued and unpaid interest as of the end of each deferment period. All such capitalized interest shall be repaid with the principal balance.

(b) *Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date provided; however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the first Disbursement Date.

(c) *Health Professions Education Loan Program:* The Deferment End Date will be 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6 ¾ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10 ¾ years after the first Disbursement Date.

(d) *Residency Loan Program:* The Deferment End Date will be 270 days after the Student ceases for any reason to be enrolled in a medical residency or internship, but no more than 4¾ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years (25 years for loans with a Principal Sum of $40,000 or more) unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment. Additional Deferment (See Paragraph C(3)(a)) will not extend the Repayment Period.

**D. INTEREST:**

1. Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of

SLS 646

the State of California. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes.  The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth of one percent (0.01%).  If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on any of these dates, then the Current Index will be determined by using the immediately preceding published Current Index for such date. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option, I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period. In addition, if my loan will be disbursed in multiple disbursements and if I have elected the "Immediate Repayment" option, you will capitalize interest that accrues between the first disbursement of my loan and the final disbursement of my loan.  I understand that regardless of the repayment option I chose, you will capitalize interest at the end of any forbearance period.  In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

E.  TERMS OF REPAYMENT:

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan).  Statements will be sent to the address shown on your records.  If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement.  If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins.  During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge.  If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3.  Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal

monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest.  If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less.  To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F.  LOAN ORIGINATION FEE:  If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed.  The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement.  The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced).  For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced.  The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum.  To the extent permitted by law, and unless I timely cancel a disbursement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee relating to that disbursement.

G.  RIGHT TO PREPAY:  I have the right to prepay all or any part of my loan at any time without penalty.

H.  FORBEARANCE:  If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I.  WHOLE LOAN DUE:  To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J.  NOTICES:

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

SLS 647

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

**L. ADDITIONAL AGREEMENTS:**

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. **I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit**

institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

**M. DISCLOSURE NOTICES**

> **ALL APPLICANTS:**
> **IMPORTANT FEDERAL LAW NOTICE—**
>
> *Important information about procedures for opening a new account:*
> **To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**
>
> *What this means for you:*
> **When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

If the School is considered to be a business subject to the Federal Trade Commission rules, then the following notice applies to me:

NOTICE

ANY HOLDER OF THIS CREDIT AGREEMENT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH I COULD ASSERT AGAINST THE SCHOOL FOR THE SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY ME SHALL NOT EXCEED AMOUNTS PAID BY ME HEREUNDER.

FOR STUDENTS ATTENDING SCHOOLS LOCATED IN CALIFORNIA:
If the School is considered to be a business subject to the Federal Trade Commission rules, then the following notice applies to me:
YOU MAY ASSERT AGAINST THE HOLDER OF THE PROMISSORY NOTE YOU SIGNED IN ORDER TO FINANCE THE COST OF INSTRUCTION ALL OF THE CLAIMS AND DEFENSES THAT YOU COULD ASSERT AGAINST THIS SCHOOL, UP TO

THE AMOUNT YOU HAVE ALREADY PAID UNDER THE PROMISSORY NOTE.

SLS 648

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. **IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of California, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan. OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every state in the United States except the following: Alabama and Nebraska 19 years old, and Mississippi and Puerto Rico 21 years old. I certify that I meet these state age requirements.

By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.

SLS 649

## * *Cosigned* *    Loan Request/Credit Agreement – Information Page

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Loan Program:                                                    Academic Period:

Lender: Bank of America, N.A.          School:

Loan Amount Requested:                 Repayment Option:

Deferral Period Margin:                    Repayment Period Margin:          Loan Origination Fee Percentage:

### STUDENT BORROWER INFORMATION

Borrower Name:                              Home Address:
Social Security #:                            Date of Birth:                     Home Telephone:
Mobile Telephone:                          E-mail Address:
Borrower Citizenship (check one box):   ☐ U.S. Citizen        ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name:_____   Reference Home Tel #:_____ Work Tel #:_____

Reference Street Address:_____

Reference City/State/Zip:_____

### COSIGNER INFORMATION (Must be age of majority in state of residence)

Cosigner Name:                              Home Address:
Social Security #:                            Date of Birth:                     Home Telephone:
Mobile Telephone:                          E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy?     ☐ No      ☐ Yes
Current Employer:                                                                     Employer Telephone:
Current Position:                             Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.**

Cosigner Citizenship (check one box):    ☐ U.S. Citizen        ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note:  Personal reference name and address cannot match that of the Borrower.

Personal Reference Name:_____   Reference Home Tel #:_____ Work Tel #:_____

Reference Street Address:_____

Reference City/State/Zip:_____

## Borrower and Cosigner:  Read and, where indicated, sign and date the next page.

{W0675664.1}BK.07-08.CSX1.10DC.0107

1 of 7

SLS 650

## *Cosigned* Loan Request/Credit Agreement – Signature Page

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all seven (7) pages of this Loan Request/Credit Agreement BK.07-08.CSX1.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

## FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

### NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley):
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

### AVISO PARA EL FIADOR (Spanish Translation Required by Law):
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsibilidad de la deuda.

For purposes of the following notices, "you" means the Borrower and Cosigner, not the Lender.

FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page (and the Information Page) With Proof of Income and Other Information (if applicable)
FAX TO:

Signature of Borrower_____    Date_____

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner_____    Date_____

{W0675664.1}BK.07-08.CSX1.10DC.0107

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the student Borrower without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. **If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement.** If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check that disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
(a) **_Undergraduate Alternative Loan Program:_** If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment

option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5 ½- year maximum.
(b) **_Graduate Professional Education Loan Program:_** The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the

principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, **if** I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against

the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the student Borrower fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. **I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.**

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to the Borrower and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

M. DISCLOSURE NOTICES

> ALL APPLICANTS:
> IMPORTANT FEDERAL LAW NOTICE—
>
> *Important information about procedures for opening a new account:*

SLS 654

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for student Borrowers (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

**By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.**

**O. STATE-SPECIFIC COSIGNER NOTICES:** For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

**FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:**

*NOTICE:* You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the Borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of
this Credit Agreement.
Name of Creditor: Bank of America, National Association, and its successors
and assigns.
Date: If the loan is disbursed by check, the date of the check. If the loan is
disbursed electronically, the date the creditor transmits the funds to the
School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first page of
this Credit Agreement (to the extent advanced), plus interest and the Loan
Origination Fee set forth in this Credit Agreement.
**FOR OBLIGORS COSIGNING IN VERMONT:**

*NOTICE TO COSIGNER*

**YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU
ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE
BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO
COLLECT FROM YOU.
FOR OBLIGORS COSIGNING IN WEST VIRGINIA:**

---

**NOTICE TO COSIGNER**
You are being asked to guarantee this debt. Think carefully before you do.
If the Borrower doesn't pay the debt, you will have to. Be sure you can
afford to pay it if you have to, and that you want to accept this
responsibility. You may have to pay up to the full amount of the debt if the
Borrower does not pay. You may also have to pay late fees or collection
costs, which increase this amount. The creditor can collect this debt from
you without first trying to collect from the Borrower. The creditor can use
the same collection methods against you that can be used against the
Borrower, such as suing you, garnishing your wages, etc. If this debt is
ever in default, that fact may become a part of your credit record. This
notice is not the contract that makes you liable for the debt.

---

## Fleet National Bank Loan Application/Promissory Note Instructions
SLS 656

Attached is your Application/Promissory Note for an International Student Loan Program Loan.  Please review it carefully and follow the steps listed below for loan approval and disbursement of your funds.

| Student's Mailing Address |
|---|
| |

**This is a Legal Document
Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ 1.   **REVIEW all pre-printed information, complete and SIGN the Loan Application/Promissory Note**
- **Please complete the required Citizenship and Reference information items.**
- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change.  Please do not use correction fluid ("white out").
- Be sure to legibly sign the bottom of the first page of the Application/Promissory Note.  Signature of the borrower must match the name pre-printed on the Application/Promissory Note.
- Do not cross out anything in the date or signature fields.  If you have made an error on the signature or date lines, please contact us as you will need to complete a new promissory note.

_____ 2.  **ATTACH proof of income**
- For regular wage earners:  provide a copy of your **current paycheck stub** with year-to-date earnings, and **last 2 years' W2 forms**.
- For self-employed individuals:  provide your **Federal tax returns for the last 2 years,** complete with all schedules and signatures.
- For retired individuals:  provide your **1099 forms for the last 2 years**.

_____ 3.  **ATTACH other required information** (if applicable)
- If the student is an "eligible non-citizen," you must provide one of the following:  Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.
- If the student has defaulted on a student loan or declared bankruptcy, please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).
- If the student is relying on alimony or child support payments to repay this loan, please provide a complete copy of the divorce decree.

_____ 4.  **RETURN signed paperwork and all requested documents**
- Return the signed signature page from the Application/Promissory Note along with the other information described in Steps 2 and 3 above to the address below.  Retain all remaining pages for your records.



| For regular delivery, mail to: | For overnight delivery, send to: |
|---|---|
| International Education Finance Corporation | International Education Finance Corporation |
| c/o TERI | c/o TERI |
| P.O. Box 312 | 330 Stuart St. Suite 500 |
| Boston MA  02117-0312 | Boston, MA  02116 |

- For faster loan processing, you can FAX the signature page of your Application/Promissory Note and the other information described in Steps 2 and 3 above **FROM A DOMESTIC FAX NUMBER** to 888-329-8374.

**Once I return my Loan Application/Promissory Note, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon 3 items; receipt of the signed signature page, proof of income and other information described above, and school certification of enrollment and loan amount.  Please allow 1 week from receipt of your completed paperwork to set a disbursement date for your funds.  At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.

**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime.  Simply visit us online at www.teri.org or call 1- 888-224-4451.

{W0020339.5}PF.02-03.CRWO.10ISLP.0502

| *Creditworthy Student* | Loan Application/Promissory Note – Signature Page |
|---|---|

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

**LOAN PROGRAM INFORMATION**

Fleet ISLP Loan Program:         Lender:  Fleet National Bank         Repayment Option:

Loan Amount Requested:         School:         Academic Period:

Deferral Period Margin:         Repayment Period Margin:

Loan Origination Fee Percentage:

**STUDENT BORROWER INFORMATION** (Must be at least 18 years of age)

Borrower Name:         Home Address:
Social Security #:         Date of Birth:         Home Telephone:
Have you ever defaulted on a student loan or declared bankruptcy?  ☐ No  ☐ Yes
Current Employer:         Employer Telephone:
Current Position:         Years There:         Gross Annual Salary:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.**

**Please complete the required information below:**

Student Citizenship (check one box):  ☐ U.S. Citizen    ☐ Eligible Non-Citizen
Personal Reference Name:_____    Reference Home Tel #:_____    Work Tel #:_____
Reference  Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Application/Promissory Note PF.02-03.CRWO.10ISLP.0502.  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. I understand that I am not required to fax my signature on this Application/Promissory Note to Lender. If I choose to fax my signature on this Application/Promissory Note to Lender, I intend: (i) my fax signature to be an electronic signature under applicable federal and state law, (ii) the fax to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Application/Promissory Note will not be governed by Article 3 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:  (a)  DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b)  DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE IF IT CONTAINS ANY BLANK SPACES.**
**(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

**PLEASE SIGN BELOW – RETURN** This Page With Proof of Income and Other Information (if applicable) – **FAX TO:  888-329-8374**

Signature of Borrower _____    Date _____

**Attach Paycheck Stub Here (if applicable)**

In this Application/Promissory Note, the words "I", "me", "my", and "mine" mean the **SLS 658** person who signed this Application/Promissory Note as Borrower. The words "you", "your", "yours", and "Lender" mean Fleet National Bank, its successors and assigns, and any other holder of this Application/Promissory Note. "School" means the school named at the top of the first page of this Application/Promissory Note.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Application/Promissory Note, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F), interest on such principal sum, interest on any unpaid interest added to the principal balance and late charges (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Application, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Application/Promissory Note, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Application/Promissory Note. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the Loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Application/Promissory Note and in the Disclosure Statement by doing either of the following: (a) endorsing the check that disburses the loan proceeds; or (b)using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I received the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Application/Promissory Note will not be canceled and I will be in default of this Application/Promissory Note. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Application/Promissory Note and will be the date or dates of my loan check or electronic funds transfer.

2. The "Deferment Period" will begin on the first Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Application/Promissory Note).

(a) *Undergraduate International Student Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Application/Promissory Note), there is no Deferment Period, and my first payment will be 45 days after the last disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), then interest payments will begin 45 days after the first disbursement of my loan, and the "Deferment End Date" will be 45 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program). If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, the Deferment End Date will be no more than 4½ years after the first Disbursement Date (or 5½ years if I am enrolled in a 5 year degree program). If I have not specifically elected to defer payments or to defer principal, deferment of principal and interest payments will apply.

(b) *Graduate International Student Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the first Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. Before my first payment is due, you will disclose the anticipated Repayment Period. The anticipated Repayment Period will not exceed 20 years (25 years for loans of $40,000 or more), although the Repayment Period may increase by up to 2½ years if the Variable Rate (Paragraph D.2) increases ("Maximum Repayment Period"). (See Paragraphs E.2 and E.3.)

**D. INTEREST:**

1. Accrual – Beginning on the first Disbursement Date, interest on the outstanding balance of this Application/Promissory Note will be calculated at the Variable Rate (Paragraph D.2) on the principal balance advanced, and on any unpaid interest added to principal according to Paragraph D.3., below, until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Application/Promissory Note. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Rhode Island. The Variable Rate will change monthly on the first day of each month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the first Change Date) is the Prime Rate as published in *The Wall Street Journal* under the "Money Rates" section for the day which is 1 day prior to each Change Date. If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. In the event that more than one Prime Rate is published, the Current Index will be the highest rate published. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period. The sum is thereafter considered the principal, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), you will send me statements during the Deferment Period (showing the total of my loan disbursements and the interest that accrues on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Application/Promissory Note. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – During the Repayment Period, you will send me monthly statements or a coupon book which shows the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Application/Promissory Note.

3. Repayment Terms – My monthly payment will be established based on the rules in this Application/Promissory Note when my Repayment Period begins. My loan term will be calculated each Change Date to equal the term necessary to amortize the unpaid balance at the current payment amount, provided that my loan term will never exceed the length of the Maximum Repayment Period. If my loan term is already equal to the Maximum Repayment Period, the amounts shown on my monthly statements or in my coupon book will be consecutive monthly installments of principal and interest calculated each Change Date to equal the amount necessary to amortize the unpaid principal balance (including any capitalized interest) of my loan (as of the date of calculation) in equal monthly installments of principal and interest at the Variable Rate then in effect over the number of months remaining in the Repayment Period.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $50 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. I understand that this may result in my loan being paid off before the end of the Repayment Period.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late charges, I will also owe additional amounts for those late charges. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late charges, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late charge not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Application/Promissory Note, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time of each loan disbursement. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement. The Loan Origination Fee will be equal to the Loan Origination Fee Percentage (shown on the first page of this Application/Promissory Note) multiplied by the total principal amount of my loan. The total principal amount of my loan includes both the Loan Amount Requested (to the

extent advanced to me) and the Loan Origination Fee, because the Loan Origination **SLS 659** Fee will be financed by this loan and added to my principal balance. To calculate the dollar amount of the Loan Origination Fee, I can divide the Loan Amount Requested by 1 minus the Loan Origination Fee Percentage, and then subtract the Loan Amount Requested. For example, if my Loan Origination Fee Percentage is 6.5%, and the Loan Amount Requested is $1,000, the Loan Origination Fee would be ($1,000/(1-.065)) - $1,000, which is $1.069.52 - $1,000, or $69.52. $69.52 is equal to 6.5% of $1,069.52, which is the total principal amount of the loan To the extent permitted by law, and unless I timely cancel this Application/Promissory Note (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Application/Promissory Note, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Application/Promissory Note, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Application/Promissory Note, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. You may also add any interest and fees to the principal balance, and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, or any subsequent holder of this Application/Promissory Note, within ten days after any change in my name, address, or enrollment status.

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

**L. ADDITIONAL AGREEMENTS:**

1. I understand that you are located in Rhode Island and that this Application/Promissory Note will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS APPLICATION/PROMISSORY NOTE WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF RHODE ISLAND, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School or to pay off other education loans.

3. My responsibility for paying the loan evidenced by this Application/Promissory Note is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Application/Promissory Note you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Application/Promissory Note to me for payment or make protest of non-payment to me before suing to collect on this Application/Promissory Note if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PARTIAL PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Application/Promissory Note or any of its benefits or obligations. You may assign this Application/Promissory Note at any time.

5. The terms and conditions set forth in this Application/Promissory Note and Instructions constitute the entire agreement between you and me.

6. If any provision of this Application/Promissory Note is held invalid or unenforceable, that provision shall be considered omitted from this Application/Promissory Note without affecting the validity or enforceability of the remainder of this Application/Promissory Note.

7. A provision of this Application/Promissory Note may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Application/Promissory Note.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Application/Promissory Note. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise, and I give you a security interest in all such amounts.

9. All dollar amounts stated in this Application/Promissory Note are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Application/Promissory Note.

11. **I acknowledge that the requested loan may be subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit loan guaranty agency.**

12. I authorize any school that I may attend to release to other persons designated by you, any requested information pertinent to this loan (e.g. enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Application/Promissory Note, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Application/Promissory Note and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me.

14. Waiver by Lender: Except as stated in Paragraph L.8, you waive (give up) any right to claim a security interest in any property to secure this Application/Promissory Note. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Application/Promissory Note back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Application/Promissory Note. You and I agree that all copies of this Application/Promissory Note (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

**M. STATE DISCLOSURE NOTICES**

IOWA RESIDENTS **(For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE BEFORE YOU READ THIS APPLICATION/PROMISSORY NOTE. 2. YOU ARE ENTITLED TO A COPY OF THIS PAPER. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAYBE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of

the agreement between us, except as we may later agree in writing to modify it.

<u>NEVADA RESIDENTS</u>:  This is a loan for study.

<u>OHIO RESIDENTS</u>: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio civil rights commission administers compliance with this law.

<u>WISCONSIN RESIDENTS</u>: For married Wisconsin residents, my signature on this Application/Promissory Note confirms that this loan obligation is being incurred in the interest of my marriage or family.  No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

<u>NEW JERSEY RESIDENTS</u>: The section headings of this Application/Promissory Note are a table of contents and not contract terms.  Portions of this Application/Promissory Note with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires.  In this Application/Promissory Note, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

SLS 660

**N. BORROWER'S CERTIFICATION:**  I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Application/Promissory Note, is true, complete and correct to the best of my knowledge and belief and is made in good faith.  I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated.  I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

## Fleet National Bank Loan Application/Promissory Note Instructions

SLS 661

You have been conditionally approved for a Private Education Loan.  Attached is your Application/Promissory Note.  Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document**
**Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ **1.   REVIEW all pre-printed information, complete and SIGN the Loan Application/Promissory Note**

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change.  Please do not use correction fluid ("white out") for any changes.
- Be sure to legibly sign and date the bottom of the first page of the Application/Promissory Note.  Signatures of the borrower and cosigner must match the names pre-printed on the Application/Promissory Note.
- Do not cross out anything in the date or signature fields.  If you have made an error on the signature or date lines, please contact us as you will need to complete a new promissory note.

_____ **2.   ATTACH proof of income**

- For regular wage earners:  provide a copy of the cosigner's **current paycheck stub not more than 60 days old that contains the company name and the name of the employee**.
- For self-employed individuals:  provide the cosigner's **Federal tax returns for the last 2 years,** complete with all schedules and signatures.
- For retired individuals:  provide the cosigner's **1099 forms for the last 2 years**.

_____ **3.   ATTACH other required information** (if applicable)

- If either the student or cosigner is an "eligible non-citizen," you must provide one of the following:  Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.
- If either the student or cosigner has defaulted on a student loan or declared bankruptcy, please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).
- If the cosigner is relying on alimony or child support payments to repay this loan, please provide a complete copy of the divorce decree.
- If this loan is for a past due balance, please submit a current invoice indicating the amount owed for the specific academic period.

_____ **4.   RETURN signed paperwork and all requested documents**

- Return the signed signature page from the Application/Promissory Note along with the other information described in Steps 2 and 3 above to the address below.  Retain all remaining pages for your records.

For regular delivery, mail to:          For overnight delivery, send to:
TERI                                    TERI
P.O. Box 312                            31 St. James Avenue, 6th Floor
Boston MA  02117-0312                   Boston, MA  02116

- For faster loan processing, you can FAX **FROM A DOMESTIC FAX NUMBER** the signature page of your Application/Promissory Note and the other information described in Steps 2 and 3 above to [_____].

**Once I return my Loan Application/Promissory Note, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon 3 items; receipt of the signed signature page, proof of income and other information described above, and school certification of enrollment and loan amount.  Please allow 2 business days from receipt of your completed paperwork to set a disbursement date for your funds.  At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.

**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime.  Simply visit us online at [_____] or call [_____].

{W0094608.6}PF.03-04.CSX1.10.0303

| * *Cosigned* *    Loan Application/Promissory Note – Signature Page |
|---|

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

| LOAN PROGRAM INFORMATION |
|---|

Fleet [] Loan Program                 Lender: Fleet National Bank            Repayment Option:

Loan Amount Requested:                School:                              Academic Period:

Deferral Period Margin:                                                    Loan Origination Fee Percentage:

Repayment Period Margin:

| STUDENT BORROWER INFORMATION (Must be at least 18 years of age) |
|---|

Borrower Name:                        Home Address:
Social Security #:                    Date of Birth:                        Home Telephone:

Student Citizenship (check one box):    ☐ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Note:  Personal reference name and address can not match that of the Cosigner.
Personal Reference Name:_____        Reference Home Tel #:_____  Work Tel #:_____
Reference  Street Address:_____
Reference City/State/Zip:_____

| COSIGNER INFORMATION (Must be at least 18 years of age) |
|---|

Cosigner Name:                        Home Address:
Social Security #:                    Date of Birth:                        Home Telephone:
Have you ever defaulted on a student loan or declared bankruptcy?    ☐ No    ☐ Yes
Current Employer:                                                          Employer Telephone:
Current Position:                     Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.**
Cosigner Citizenship (check one box):    ☐ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of INS)
Note:  Personal reference name and address cannot match that of the Borrower.
Personal Reference Name:_____        Reference Home Tel #:_____  Work Tel #:_____
Reference  Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Application/Promissory Note PF.03-04.CSX1.10.0303.  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. I understand that I am not required to fax my signature on this Application/Promissory Note to Lender. If I choose to fax my signature on this Application/Promissory Note to Lender, I intend: (i) my fax signature to be an electronic signature under applicable federal and state law, (ii) the fax to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Application/Promissory Note will not be governed by Article 3 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a)  **DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
(b)  **DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE IF IT CONTAINS ANY BLANK SPACES.**
(c)  **YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
(d)  **YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

| PLEASE SIGN BELOW – <u>RETURN</u> This Page With Proof of Income and Other Information (if applicable) – **FAX TO:  888-329-8374** |
|---|

Signature of Borrower _____        Date _____

Signature of Cosigner _____        Date _____

In this Application/Promissory Note, the words "I", "me", "my", and "mine" mean the SLS 663 person(s) who signed this Application/Promissory Note as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Fleet National Bank, its successors and assigns, and any other holder of this Application/Promissory Note. "School" means the school named at the top of the first page of this Application/Promissory Note.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Application/Promissory Note, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F), interest on such principal sum, interest on any unpaid interest added to the principal balance and late charges (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Application, you are not agreeing to lend me money. If you decide to make a loan to the Borrower, you will electronically transfer the loan funds to the School for the Borrower, mail a loan check to the School for the Borrower, or mail a loan check directly to the Borrower. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Application/Promissory Note, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Application/Promissory Note. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the Loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Application/Promissory Note and in the Disclosure Statement by doing either of the following: (a) endorsing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I received the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Application/Promissory Note will not be canceled and I will be in default of this Application/Promissory Note. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Application/Promissory Note and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the first Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Application/Promissory Note).

(a) **_Undergraduate Alternative Loan Program_:** If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Application/Promissory Note), there is no Deferment Period, and my first payment will be 30-60 days after the last disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), then interest payments will begin 30-60 days after the first disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, the Deferment End Date will be no more than 4½ years after the first Disbursement Date (or 5½ years if the Student is enrolled in a five-year undergraduate program at the School).

(b) **_Graduate Professional Education Loan Program:_** 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the first Disbursement Date.

(c) **_Health Professions Education Loan Program:_** 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 5¾ years

after the first Disbursement Date (or 6¾ years if the Student is enrolled in a six-year program at the School); provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10¾ years after the first Disbursement Date.

(d) **_Consolidation Loan Programs_:** There is no Deferment Period.

(e) **_Degreed Undergraduate Alternative Loan (DUAL) Program:_** 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date (or 5½ years if the Student is enrolled in a five-year undergraduate program at the School).

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years (25 years for loans of $40,000 or more) unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the first Disbursement Date, interest on the outstanding balance of this Application/Promissory Note will be calculated at the Variable Rate (Paragraph D.2) on the principal balance advanced, and on any unpaid interest added to principal according to Paragraph D.3., below, until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Application/Promissory Note. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Rhode Island. The Variable Rate will change monthly on the first day of each month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any month (or for any shorter period beginning on the Disbursement Date and ending on the first Change Date) is the Prime Rate as published in *The Wall Street Journal* under the "Money Rates" section for the day which is 1 day prior to each Change Date. If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. In the event that more than one Prime Rate is published, the Current Index will be the highest rate published. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period. The sum is thereafter considered the principal, and interest will accrue on the new principal balance. In addition, if my loan will be disbursed in multiple disbursements and if I have elected the "Immediate Repayment" option, you will capitalize interest that accrues between the first disbursement of my loan and the final disbursement of my loan.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Application/Promissory Note), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the Borrower at the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Application/Promissory Note. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – During the Repayment Period, you will send me monthly statements or a coupon book which shows the amounts of minimum monthly payments and the payment due dates. You reserve the right to send monthly statements or coupon books to either the Borrower or the Cosigner. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Application/Promissory Note.

3. Repayment Terms – My monthly payment will be established based on the rules in this Application/Promissory Note when my Repayment Period begins. My monthly payment will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will also be calculated following any subsequent deferment or forbearance period or any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). After any Repayment Date is set, my monthly payment will be recalculated once each year prior to the anniversary of the Repayment Date. My new monthly payment amount which will take effect on the anniversary of the Repayment Date, will be disclosed to me each year by the servicer. The new monthly payment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated each year. I understand that during the

Repayment Period (and, if I have elected the "Interest Only" repayment option, during <span style="color:red">SLS 664</span> the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4.  Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge.

5.  Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest.  If I have not paid my late charges, I will also owe additional amounts for those late charges. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6.  Payments – Payments will be applied first to late charges, other fees and charges, accrued interest, and the remainder to principal.

7.  Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late charge not exceeding $5.00 or 5% of the overdue payment amount, whichever is less.  To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Application/Promissory Note, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F.  **LOAN ORIGINATION FEE:**  If you charge me, I will pay you a Loan Origination Fee at the time of each loan disbursement. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement. The Loan Origination Fee will be equal to the Loan Origination Fee Percentage (shown on the first page of this Application/Promissory Note) multiplied by the total principal amount of my loan. The total principal amount of my loan includes both the Loan Amount Requested (to the extent advanced to me) and the Loan Origination Fee, because the Loan Origination Fee will be financed by this loan and added to my principal balance. To calculate the dollar amount of the Loan Origination Fee, I can divide the Loan Amount Requested by 1 minus the Loan Origination Fee Percentage, and then subtract the Loan Amount Requested.  For example, if my Loan Origination Fee Percentage is 6.5%, and the Loan Amount Requested is $1,000, the Loan Origination Fee would be ($1,000/(1-.065)) - $1,000, which is $1,069.52 - $1,000, or $69.52. $69.52 is equal to 6.5% of $1,069.52, which is the total principal amount of the loan. To the extent permitted by law, and unless I timely cancel this Application/Promissory Note (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G.  **RIGHT TO PREPAY:**  I have the right to prepay all or any part of my loan at any time without penalty.

H.  **FORBEARANCE:**  If I am unable to repay my loan in accordance with the terms established under this Application/Promissory Note, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I.  **WHOLE LOAN DUE:**  To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Application/Promissory Note, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Application/Promissory Note, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J.  **NOTICES:**

1.  I will send written notice to you, or any subsequent holder of this Application/Promissory Note, within ten days after any change in my name, address, or enrollment status.

2.  Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

K.  **INFORMATION:**

1.  I must update the information I provided to you whenever you ask me to do so.

2.  I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

L.  **ADDITIONAL AGREEMENTS:**

1.  I understand that you are located in Rhode Island and that this Application/Promissory Note will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS APPLICATION/PROMISSORY NOTE WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF RHODE ISLAND, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School or to pay off other educational loans. The Cosigner, if any, will not receive any of the loan proceeds.

3.  My responsibility for paying the loan evidenced by this Application/Promissory Note is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Application/Promissory Note you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Application/Promissory Note to me for payment or make protest of non-payment to me before suing to collect on this Application/Promissory Note if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4.  I may not assign this Application/Promissory Note or any of its benefits or obligations. You may assign this Application/Promissory Note at any time.

5.  The terms and conditions set forth in this Application/Promissory Note and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6.  If any provision of this Application/Promissory Note is held invalid or unenforceable, that provision shall be considered omitted from this Application/Promissory Note without affecting the validity or enforceability of the remainder of this Application/Promissory Note.

7.  A provision of this Application/Promissory Note may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Application/Promissory Note.

8.  To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Application/Promissory Note.  I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise, and I give you a security interest in all such amounts.

9.  If this Application/Promissory Note is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers.  I intend to be treated as a principal of this Application/Promissory Note and not as a surety.  To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration).  I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me.  It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment.  For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10.  All dollar amounts stated in this Application/Promissory Note are in United States dollars.  I will make all payments in United States Dollars with no deduction for currency exchange.

11.  If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Application/Promissory Note.

12.  **I acknowledge that the requested loan may be subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code.  Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit loan guaranty agency.**

13.  I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g. enrollment status, prior loan history, and current address).

14.  I authorize the Lender, any subsequent holder of this Application/Promissory Note, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Application/Promissory Note and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Application/Promissory Note.

15.  Waiver by Lender: Except as stated in Paragraph L.8, you waive (give up) any right to claim a security interest in any property to secure this Application/Promissory Note.  This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Application/Promissory Note back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Application/Promissory Note.  You

and I agree that all copies of this Application/Promissory Note (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

**M. STATE DISCLOSURE NOTICES**

IOWA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS APPLICATION/PROMISSORY NOTE BEFORE YOU READ THIS APPLICATION/PROMISSORY NOTE. 2. YOU ARE ENTITLED TO A COPY OF THIS APPLICATION/PROMISSORY NOTE. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Application/Promissory Note confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

NEW JERSEY RESIDENTS: The section headings of this Application/Promissory Note are a table of contents and not contract terms. Portions of this Application/Promissory Note with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Application/Promissory Note, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Application/Promissory Note, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in

default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

**O. STATE-SPECIFIC COSIGNER NOTICES:** For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN WEST VIRGINIA:

> **NOTICE TO COSIGNER**
> You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:

*NOTICE*: You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Application/Promissory Note or contract. You will also have to pay some or all of these costs and charges if the Application/Promissory Note or contract, the payment of which you are guaranteeing requires the borrower to pay such costs and charges. This notice is not the Application/Promissory Note or contract that obligates you to pay the debt. Read the Application/Promissory Note or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Application/Promissory Note.
Name of Creditor: Fleet National Bank, and its successors and assigns.
Date: If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first page of this Application/Promissory Note (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Application/Promissory Note.

FOR OBLIGORS COSIGNING IN VERMONT:

*NOTICE TO COSIGNER*

YOUR SIGNATURE ON THIS APPLICATION/PROMISSORY NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

SLS 665

## **FEDERAL AND CALIFORNIA COSIGNER NOTICES**

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

---

**NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to.  Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay.  You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower.  The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo.  Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla.  Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor.  Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc.  Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

---

{W0094608.6}PF.03-04.CSX1.10.0303.FD

SLS 667

---

| *Creditworthy Student* *   Loan Request/Credit Agreement – Signature Page |
|---|

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

---

**LOAN PROGRAM INFORMATION**

Loan Program:                                          Academic Period:

Lender: Bank of America, National Association          School:

Loan Amount Requested:          Repayment Option:

Deferral Period Margin:          Repayment Period Margin:          Loan Origination Fee Percentage:

---

**BORROWER INFORMATION (Must be age of majority in state of residence)**

Borrower Name:                    Home Address:
Social Security #:                Date of Birth:              Home Telephone:
Mobile Telephone:                 E-mail Address:
Current Employer:                                            Employer Telephone:
Current Position:                 Years There:
Years at Previous Employment:

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Student Citizenship (check one box):    ☐ U.S. Citizen              ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Personal Reference Name:_____    Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

---

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement BK.07-08.CRWO.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

For purposes of the following notices, "you" means the Borrower , not the Lender.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**PLEASE SIGN BELOW – RETURN** This Page With Proof of Income and Other Information (if applicable)
**FAX TO:**

Signature of Borrower_____    Date _____

(W0675675.1)**BK.07-08.CRWO.10DC.0107**         1 of 5

SLS 668

in this Credit Agreement, the words "I", "me", "my", and "mine" mean the person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.4).

**B. IMPORTANT – READ THIS CAREFULLY.**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.

2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds, or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. **If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement.** If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be cancelled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60

days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the Student first graduates or ceases to be enrolled at least half time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5½ year maximum.

(b) *Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in the calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of The Wall Street Journal (Eastern Edition). The Index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one hundredth of one percent (0.01%). If The Wall Street Journal (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

SLS 669

## E. TERMS OF REPAYMENT:

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

> **You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.**

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

**L. ADDITIONAL AGREEMENTS:**

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

SLS 670

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. **I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.**

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) retain for use in any future transaction with the Borrower all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

**M. DISCLOSURE NOTICES**

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: **Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable.**

SLS 671

To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.

SLS 672

Cosigned    Loan Request/Credit Agreement – Information Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

## LOAN PROGRAM INFORMATION

Loan Program:                                          Academic Period:

Lender: Bank of America, N.A.        School:

Loan Amount Requested:                 Repayment Option:

Deferral Period Margin:                    Repayment Period Margin:          Loan Origination Fee Percentage:

## STUDENT BORROWER INFORMATION

Borrower Name:                              Home Address:
Social Security #:                           Date of Birth:                          Home Telephone:
Mobile Telephone:                          E-mail Address:
Borrower Citizenship (check one box):   ☐ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name:_____        Reference Home Tel #:_____ Work Tel #:_____

Reference Street Address:_____

Reference City/State/Zip:_____

## COSIGNER INFORMATION (Must be age of majority in state of residence)

Cosigner Name:                             Home Address:
Social Security #:                           Date of Birth:                          Home Telephone:
Mobile Telephone:                          E-mail Address:
Have you ever defaulted on a student loan or declared bankruptcy?    ☐ No      ☐ Yes
Current Employer:                                                                          Employer Telephone:
Current Position:                             Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.**

Cosigner Citizenship (check one box):   ☐ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note:  Personal reference name and address cannot match that of the Borrower.

Personal Reference Name:_____        Reference Home Tel #:_____ Work Tel #:_____

Reference Street Address:_____

Reference City/State/Zip:_____

**Borrower and Cosigner:  Read and, where indicated, sign and date the next page.**

SLS 673

**Continued    Loan Request/Credit Agreement – Signature Page**

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all seven (7) pages of this Loan Request/Credit Agreement BK.07-08.CSX1.10DC.0107 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FEDERAL AND CALIFORNIA COSIGNER NOTICES**

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

**NOTICE TO COSIGNER (Traducción en Inglés Se Requiere Por La Ley):**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsibilidad de la deuda.

For purposes of the following notices, "you" means the Borrower and Cosigner, not the Lender.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY CREDIT AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**PLEASE SIGN BELOW, RETURN** ... Loan Request Information Report With Pre-Enrollment and Other Information (if applicable)
**FAX TO**

Signature of Borrower_____    Date_____

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner_____    Date_____

{W0675664.1}**BK.07-08.CSX1.10DC.0107**

2 of 7

In this Credit Agreement, the words "I", "me", "my", and "mine" mean the person(s) who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Bank of America, National Association, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

A. PROMISE TO PAY: I promise to pay to you the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together, the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

B. IMPORTANT – READ THIS CAREFULLY:

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A). You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.

2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the student Borrower without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. **If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement.** If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check that disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

C. DEFINITIONS:

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment

option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, joint and serial (associates to bachelors) degree recipients may continue in-school deferment while completing their second degree, up to the 5-year or 5 ½- year maximum.

(b) *Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

D. INTEREST:

1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of California. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the

SLS 675

principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will also add all accrued and unpaid interest to the principal balance of my loan at the end of any forbearance period (see Paragraph H).

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you may, or, if required by applicable law, will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send me monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in my name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

SLS 676

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

3. CREDIT BUREAU REPORTING

You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults in accordance with applicable law.

L. ADDITIONAL AGREEMENTS:

1. I understand that you are located in California and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner, if any, will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the student Borrower fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents (including TERI) to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to the Borrower and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

M. DISCLOSURE NOTICES

ALL APPLICANTS:
IMPORTANT FEDERAL LAW NOTICE—

Important information about procedures for opening a new account:

{W0675664.1}BK.07-08.CSX1.10DC.0107          5 of 7

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of CALIFORNIA, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for student Borrowers (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

**By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior credit agreements I have signed with the Lender for this loan program. I intend and agree that all such credit agreements shall be binding on me. The consideration for this affirmation is the new credit extended by the Lender to me under this Credit Agreement.**

**O. STATE-SPECIFIC COSIGNER NOTICES:** For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

**FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:**

*NOTICE*: You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the Borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

SLS 678

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Bank of America, National Association, and its successors and assigns.
Date: If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.

**FOR OBLIGORS COSIGNING IN VERMONT:**

*NOTICE TO COSIGNER*

YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

**FOR OBLIGORS COSIGNING IN WEST VIRGINIA:**

NOTICE TO COSIGNER
You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the Borrower. The creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

SLS 679

**NON-NEGOTIABLE NOTE – THIS IS A CONSUMER CREDIT TRANSACTION**

GATE® Loan Application and Multi-disbursement Note Reference #: _____

Educational Institution: _____    Address of Educational Institution: _____

| Borrower: | | | | Cosigner: | | | |
|---|---|---|---|---|---|---|---|
| | Last | First | M.I. | (If required) Last | First | M.I. | |

Borrower:
Address 1: _____
Address 2: _____
City: _____ State ____ ZIP _____
Phone ( ) _____ SSN: _____
Birth date: _____ Citizenship: _____ Alien Reg. #: _____
Reference 1: _____
Address: _____
City: _____ State ____ ZIP _____
Phone ( ) _____ Relationship: _____
Reference 2: _____
Address: _____
City: _____ State ____ ZIP _____
Phone ( ) _____ Relationship: _____

Cosigner:
Address 1: _____
Address 2: _____
City: _____ State ____ ZIP _____
Phone ( ) _____ SSN: _____
Birth date: _____ Citizenship: _____ Alien Reg. #: _____
Reference 1: _____
Address: _____
City: _____ State ____ ZIP _____
Phone ( ) _____ Relationship: _____
Reference 2: _____
Address: _____
City: _____ State ____ ZIP _____
Phone ( ) _____ Relationship: _____

| Initial Rate: | Note Margin: | Note Date: | Origination Fee: (%) | Amount Requested: |
|---|---|---|---|---|

**Notice to Borrower.** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in-copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you desire to pay off in advance the full amount due, the amount which is outstanding will be furnished upon request.

If you have any questions or do not wish to obtain the loan evidenced by this Note, do not execute this Note. Sign your name exactly as printed above. By signing below, Borrower also acknowledges receipt of a copy of this Note. Please retain Borrower copy of this Note for your records.

**Notice to Cosigner.** Do not sign this Note before reading it. Please retain Cosigner copy of the Note for your records. By signing below, Cosigner also acknowledges receipt of a copy of this Note.

**Borrower and Cosigner**

I understand that I am not required to fax my signature on or to sign electronically this Note and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Note BA.06-07.UNGT.10.0306 and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Note and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Note will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Note will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**Borrower**

I hereby acknowledge that I have read all four (4) pages of this Note BA.06-07.UNGT.10.0306 in their entirety, understand them, and agree to be bound by their terms. By signing below, I request the loan described above. This Note will not become effective until my application is approved by Lender and funds have been advanced. I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Note is signed under seal.

Signature of Borrower _____    Date _____

**Cosigner**

I hereby acknowledge that I have read all four (4) pages of this Note BA.06-07.UNGT.10.0306 in their entirety, understand them, and agree to be bound by their terms. I can afford to pay this debt if I have to, and I agree to accept this responsibility. I hereby waive and release any rights that I may have under applicable law as a cosigner, surety, guarantor or accommodation party. I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Note is signed under seal.

**BY SIGNING THIS NOTE BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner _____    Date _____

A Cosigner is required if the Borrower is under legal age to make a binding contract or if the Educational Institution or the GATE Loan Program Manual require a Cosigner.

In this Note and Disclosure Statement, the words "I," "me," or "mine" refer to Borrower and Cosigner named on the first page of this Note. The term "you," or "Lender" refers to Bank of America, N.A. and any subsequent holder of this Note. The term "Servicer" refers to any person authorized by Lender to be responsible for collecting payments and making computations relating to this Note. The term "GATE Note" and "Note" shall mean this Note, which evidences a loan to me under the Guaranteed Access to Education loan program. The proceeds of this Note will be used by Borrower to purchase educational services (including tuition, housing expenses and related expenses) from the Educational Institution.

Application/Future Disbursements

I understand that this is an application and that you are not obligated to loan money unless: (a) you approve this application, and (b) the Educational Institution verifies my disbursement dates, enrollment and maximum loan amount. My loan will be disbursed directly to the Educational Institution shown above on or about disbursement dates shown in my Disclosure (see Section 1(b)). If an Origination Fee percentage is shown on the first page of this Note, then an origination fee will be added to each disbursement and included in the principal amount of my loan. The total amount of all fees added to disbursements will equal the Prepaid Finance Charge shown in my Disclosure. A pro rata share of the total fee is added to each disbursement. (For example, if I have two equal loan disbursements, half of the total fee will be added to each disbursement.)

### 1. Promise to Pay.

**(a)  Borrower's Promise**. In return for the loan that I have received or will receive, I promise to pay the sum of all amounts borrowed under this Note, including, without limitation, amounts disbursed to the Educational Institution plus a prepaid finance charge computed by multiplying the amount credited to my account times the Origination Fee percentage shown on the first page of this Note, to Lender, or order, together with interest at the Variable Rate described below until paid in full. The amount credited to my account plus the prepaid finance charge is sometimes called the "Principal Sum" in this Note. I will make my payments in accordance with the rules set forth below. I will also pay all late charges, reasonable attorneys' fees and other costs necessary for collection of any amount not paid when due, including without limitation reasonable collection agency costs. Interest on this Note shall accrue on each disbursement from the date made on a daily basis and shall be calculated on the basis of a year of 365 or 366 days, as appropriate, for the actual number of days elapsed. Payments on this Note shall be made at the location directed by Servicer or, in the absence of such direction, to the address set forth at the end of this Note. If not sooner paid, the entire Principal Sum remaining unpaid, and all accrued interest and any other amounts outstanding hereunder, shall be due and payable in full on the Maturity Date (as defined in Section 2(a)). All payments must be made in U.S. dollars.

**(b)  Disbursement Procedure.** The amounts I will repay under this Note include disbursements made and to be made to the Educational Institution for each semester, term or regular period when tuition and fees are due to the Educational Institution. Lender will verify scheduled disbursements with the Educational Institution and make disbursements in accordance with its requirements. Prior to the date of the first disbursement, Lender will send me a disclosure, setting forth the amount and scheduled disbursement dates of all disbursements, the applicable annual percentage rate, the amount of Origination Fees to be added to my loan amount, and other disclosures required by law (the "Disclosure"). I may elect not to consummate this loan transaction by notifying the Servicer, as agent for the Lender any time up to 14 days after the date of the first disbursement. If I do not notify the Servicer within this time frame, I will be bound by the terms of this Note and the Disclosure. If I choose not to consummate this loan transaction, I will have no obligation under this Note, and all disbursements under this Note will be cancelled. If the first disbursement has already been made to the Educational Institution, I agree that a refund of the disbursed amount shall be paid directly to the Servicer, on behalf of the Lender. If I cease to be Enrolled (as defined in Section 2(f)) at the Educational Institution, any future disbursements will be cancelled.

### 2. Payments on this Note.

**(a)  Principal and Interest Payments**. Payments of principal and interest shall become due monthly, starting eight calendar months following the date I cease to be Enrolled at an Eligible Institution (see Section 2(f)) as reported by the National Clearing House or the Eligible Institution, but no longer than five (5) years plus eight (8) calendar months after the first disbursement date (the "First Payment Due Date"). Subject to a minimum monthly payment of $10.00, principal and interest shall be repaid in monthly installments in an amount that will pay all principal and interest in full by a date that is 239 months after the First Payment Due Date (the "Maturity Date"). After each Quarterly Change Date (as defined in Section 2(d)) the amount of my monthly payment will be recomputed to an amount that will pay my loan in full by the Maturity Date at the new interest rate. If I cease to be Enrolled at an Eligible Institution (as defined in Section 2(f)), whether on account of graduation, withdrawal, or otherwise, then monthly payments will be due eight calendar months after I cease to be Enrolled. I may also give the Servicer written notice that I wish to start making payments before the First Payment Due Date, in which case my monthly payments will begin eight calendar months after I give such a notice to Servicer. The Servicer may reasonably establish a First Payment Due Date other than those provided above for the convenience of the Servicer in processing payments, in the event that notice of events described above is not timely received by the Servicer, or in order to coordinate the due dates of all of the Borrower's student loans processed by the Servicer. In no event will Servicer advance the First Payment Due Date by more than 45 days. Borrower may also request a regular monthly due date other than the date assigned by the Servicer, subject to approval by Servicer. Servicer will report accrued and unpaid interest to Borrower prior to capitalization.

**(b)  Additional Payment Deferrals.** Borrower may request, in writing, further deferral of the payments due pursuant to Section 2(a) on account of enrollment in (1) undergraduate or graduate studies duly certified to Servicer by an Eligible Institution or (2) a medical internship or residency, but the total period of such further deferral may not exceed 60 months in the aggregate. Servicer may treat any notice of a revised graduation date or of new graduate enrollment (including, without limitation, notice of enrolled status from any nationally recognized financial aid information system) as such a written request for deferral. Any such further deferral of payments shall be subject to the approval of Lender in its sole and absolute discretion. Interest payments that are deferred pursuant to this Section 2(b) shall be added to the principal balance when deferment ends under the next sentence, to the extent permitted by law, and such capitalized interest shall be repaid with other principal balances under the schedule set forth below. Deferment pursuant to this Section 2(b) shall cease and monthly payments become due 30-45 days after such enrollment ceases. After any deferment, the amount of my monthly payment will be recomputed to an amount that will pay my loan in full by the Maturity Date at the interest rate then in effect.

**(c)  Interest Accrual and Capitalization.** Interest on this Note shall accrue from the date of each disbursement and shall be added to the Principal Sum when repayment begins, and such capitalized interest shall be repaid with other principal balances. If the holder

B-2

BA.06-07.UNGT.10.0306                                    *Lender Copy – Return to AES*

of this Note reasonably determines that accrued interest may not, under applicable law, be added to the principal balance and bear interest other principal as provided in this Section 2, then Borrower shall be obligated to pay all accrued interest and shall have the option, when inter payments first come due hereunder, of (i) paying all interest that has accrued on the Principal Sum to such date in cash, or (ii) consolidating accrued interest pursuant to a consolidation note payable to such holder at the same rate of interest and over the same term as this Note, (iii) executing such other documents as are necessary under applicable law to add accrued interest to principal. If Borrower fails to execut consolidation note upon request, or other necessary documents, all accrued interest shall be due and payable.

(d) **Variable Rate.** For disbursements occurring before the next Quarterly Change Date, my interest rate will start at Initial Rate shown on the first page of this Note. The interest I must pay on all disbursements will equal the "Variable Rate", determined follows. The Variable Rate shall equal the sum of the Index (as defined below) and the Margin (shown on the front of this Note). The rate change on the first day of each calendar quarter, being the first day of January, April, July and October (the "Quarterly Change Date"), to eq the sum of the current Index and the Margin rounded to the nearest one hundredth percent (.01%). Lender will determine the current Ind value on each Quarterly Change Date. The current Index value is equal to the average of the one-month London Interbank Offered Ra ("LIBOR") as published in The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding Quarterly Change Date (the "Average LIBOR Rate"). Lender may use the one-month LIBOR rates reported in the Wall Street Journal during sc period, or may rely on any other reliable published source of LIBOR rates. In the event that the information used to calculate the Index is longer publicly available, Lender may substitute another index based on comparable information regarding Eurodollar deposits.

Any change in my Variable Rate will change the amount of interest earned on my loan. After the First Payment Due Date, it will also change the amount of my monthly payments. The Servicer will tell me my new payment amount before it is due.

Under no circumstances will the amount I pay for interest and other expenses exceed an amount equivalent to 23% per annum, computed in accordance with applicable law.

(e) **Crediting of Payments.** Payments received on this Note shall be allocated in the following order: (i) to accru interest, (ii) to late charges and expenses of Lender in connection with collecting past due amounts, if any, and (iii) to outstanding princip provided however, that no otherwise timely payments shall be deemed late solely because Borrower owes a late fee with respect to a pr payment.

(f) **Definition of "Eligible Institution"; "Enrollment"** For purposes of this Note, Borrower shall be "enrolled" as student if pursuing at least a half-time course of study. For certain graduate students, "enrollment" may include less than half-time study, the extent provided in the GATE Loan Program Manual. Borrower's status as a half-time student shall be determined by the Educatio Institution, in its sole discretion. Borrower authorizes Lender to obtain such information regarding Borrower's enrollment status and Lender m request and directs all persons to deliver such information to Lender without any further authorization from Borrower. For the purpose determining enrollment status and eligibility for deferment, an Eligible Institution shall be one that is eligible to participate in student lo programs guaranteed by the United States Department of Education.

(g) **Statements; Combined.** Borrower will receive a monthly statement or periodic coupon booklet indicating the amou of the monthly installments due on this Note. Failure to receive a monthly statement or periodic coupon book does not relieve Borrower Cosigner of the responsibility and obligation of making the required principal and interest payments in accordance with the terms and conditic of this Note. If Borrower has additional notes payable to the holder, Servicer may combine the payments due under this Note with t payments due under Borrower's additional Notes; however, any partial payments will be allocated among this Note and Borrower's additio notes on the basis of the principal amounts then outstanding.

**3. Prepayment.** Borrower and Cosigner may prepay this Note, in whole or in part, at any time, without penalty, b prepayment will not entitle me to a refund of any prepaid finance charge. Any prepayment of principal shall be applied to eliminate montl payments in the order of maturity (i.e., credited to the next principal payment first). This means that the Servicer may provide "paid ahea status (i.e., deferring the due date on payments totaling an amount equal to the amount prepaid) to Borrowers who do not indicate they wish continue payments without such deferral. Servicer shall provide monthly statements regardless of whether or not a Borrower is in "paid ahea status.

**4. Representations.** Borrower and Cosigner represent that Borrower is a student at the Educational Institution and that t proceeds of this Note will be used solely for educational purposes. Borrower and Cosigner acknowledge that they have received a copy of tl Note, with all blank spaces completed. Borrower shall promptly notify Servicer or such other person as Lender directs, in writing, of any chan of name or address of Borrower, and any transfer, withdrawal or graduation from, or loss of enrolled status at, the Eligible Institution at whi Borrower had been enrolled. Cosigner shall promptly notify Servicer or such other person or entity as Lender directs, in writing, of any chan in Cosigner's name or address. If any provision hereof shall be held invalid or unenforceable, such provision shall be severable herefrom an shall be deemed omitted herefrom without affecting the validity or enforceability of the remainder of the Note. No term or provision of this No may be changed unless consented to in writing by the Lender. The terms and conditions contained herein apply to and bind the successors ar assigns of Lender. Lender is authorized to sell or otherwise assign this Note to any other party through one or more transfers or assignment Borrower hereby authorizes Lender, without further notice, to obtain the signature of Cosigner, if required by Lender. Borrower and ar Cosigner authorize Lender, without further notice, to correct any patent errors herein. Borrower and Cosigner signing this Note shall be joint and severally liable hereunder. If the name of a Cosigner does not appear above, all reference herein to Cosigner shall be deemed omitte Cosigner agrees that Lender may, without consent of Cosigner, agree from time to time to extend the time for payment or otherwise gra accommodations to Borrower and that no such extension of time for payment or other accommodation shall in any way release or affe Cosigner's obligations hereunder.

**5. Late Charge.** If any monthly payment on this Note is not paid within 10 days of the due date in accordance with its term Servicer (on behalf of Lender) may charge, and Borrower and Cosigner will pay, a late charge equal to 5% of the monthly payment amount \ $10.00, whichever is less. In addition, interest at the rate set forth above shall accrue on overdue payments to the extent permitted by law.

**6. Default and Acceleration.** The entire outstanding balance and any interest accrued hereon shall become immediately du and payable at the option of Lender, without notice or demand, together with all costs of collection and reasonable attorneys' fees, if Borrow and Cosigner shall be in default. Borrower and Cosigner shall be in default if any one of the following events occur: (a) A scheduled payment not made within 30 days of the scheduled payment date on this loan.  (b)(i) Borrower dies (and there is not a Cosigner), Borrower

B-3

NGT 2005-C09

SLS 682

adjudicated incompetent, voluntary or involuntary bankruptcy proceedings are instituted by or against Borrower, or Borrower makes an assignment for the benefit of creditors, or (ii) any one of these events occurs, but in respect of Cosigner. (c) Any statement or representation on Borrower's or Cosigner's application for the loan evidenced by this Note is materially untrue, incorrect or incomplete. (d) Borrower (or upon failure of Borrower, Cosigner, if any) fails to perform any other agreement contained in this Note. (e) Borrower fails to promptly notify Servicer, or such other person as Lender directs, in writing, of (i) any change of Borrower's name or address, or (ii) Borrower's transfer, withdrawal or early graduation from, or loss of enrolled status at, the Eligible Institution at which Borrower has been enrolled. (f) Cosigner fails to promptly notify Servicer, or such other person as Lender directs, in writing, of any changes of Cosigner's name and address. Notice is deemed prompt if received within 10 days of the above-mentioned change.

Acceptance of any payment, in whole or in part, of amounts in arrears shall not waive or affect any prior acceleration of this Note. Borrower and Cosigner hereby jointly and severally waive notice of dishonor, notice of protest, presentment, demand for payment and all other notices or demands in the event of default on this Note and agree to consent to any and all extensions, renewals or release of any party liable upon this Note or waiver and modification that may be granted by Lender, all without affecting or releasing Borrower or Cosigner from this Note.

Borrower and Cosigner agree to pay Lender immediately upon request all of its costs and expenses, including without limitation reasonable attorneys' fees and court costs and reasonable collection agency costs in enforcing this Note to the extent not prohibited by applicable law. The holder of this Note may capitalize (add to principal) any accrued, unpaid interest at the time of default and acceleration of this Note.

### 7. Credit Bureau Information and Notification.

> You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

Borrower and Cosigner hereby authorize Lender and any subsequent holder of this Note to obtain reports as deemed necessary or appropriate by them from one or more credit bureaus in connection with Borrower's and Cosigner's application for this loan and/or collection of amounts due under this Note. Borrower and Cosigner hereby authorize lender and any subsequent holder to release to the Educational Institution and to lender and its agents, including Servicer, and to The First Marblehead Corporation, information concerning the status of Borrower's loan and any information from the Educational Institution, any credit bureau or other agency which Servicer deems necessary or desirable to the performance of its duties.

Information concerning the amount of this Note and its repayment will be reported to one or more credit bureaus.

If Borrower and/or Cosigner default on this Note, Lender or holder will also report the default to the Educational Institution, to the agents of Lender, and to the credit bureau(s). Such a report may significantly and adversely affect Borrower's and/or Cosigner's ability to obtain other credit.

**8. Loan Charges.** If this Note is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Note exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this Note or by making a direct payment to Borrower. If a refund reduced principal, the reduction will be treated as a partial prepayment. Borrower and Cosigner agree that the rate of interest pursuant to the Note includes the rate described herein and any other costs, fees and other amounts to the extent that such amounts are deemed to be interest under applicable law.

**9. GOVERNING LAW. THIS NOTE SHALL BE GOVERNED BY THE LAW OF THE STATE OF CALIFORNIA (INCLUDING, WITHOUT LIMITATION, THE LAWS OF CALIFORNIA REGARDING INTEREST AND OTHER CHARGES THAT MAY BE MADE ON THIS NOTE AND THE LAWS OF CALIFORNIA PERMITTING COMPOUNDING OF INTEREST AS CONTEMPLATED BY THIS NOTE).**

10. If I fax my signature(s) on the first page of this Note back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Note. You and I agree that all copies of this Note (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

11. If any Borrower or Cosigner elects to sign electronically an electronic record of this Note, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Note and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

> **ALL APPLICANTS:**
> **IMPORTANT FEDERAL LAW NOTICE—**
> *Important information about procedures for opening a new account:*
> To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
> *What this means for you:*

B-4

BA.06-07.UNGT.10.0306

*Lender Copy – Return to AES*

(N0321316.9)

SLS 683

When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**NOTICE**

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR C( ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Address for Payments:  Until notified otherwise, I should make my payments to: AES Loan Servicing, Harrisburg, PA 17130-0001   Phone:  (800) 233-0557

B-5

(W0321116.9)           BA.06-07.UNGT.10.0306                                   *Lender Copy – Return to AES*