UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ROXANNE DAWSON

      Plaintiff,                                          Case No.: 23 Civ. 9690

vs.

STUDENT LOAN SOLUTIONS, LLC
ROACH & MURTHA ATTORNEYS AT LAW, P.C.

      Defendants.
_____

**PLAINTIFF'S LOCAL CIVIL RULE 56.1 COUNTERSTATEMENT IN RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

        In accordance with Local Civil Rule 56.1 and the Court's Individual Rule 5.C.ii, Plaintiff in the above-captioned action respectfully submits this counterstatement in response to Defendant's Local Rule 56.1 Statement of Undisputed Facts, ECF No. 102.

**Defendant's Statements of Material Fact with Plaintiff's Responses:**

1. On November 29, 2007, Plaintiff Roxanne Dawson ("Plaintiff") and her father, Isaiah Dawson, signed a "Loan Request/Credit Agreement" with Bank of America, N.A. for a student loan for Plaintiff ("Plaintiff's Loan"). DE 85-5, pp. 21-27.

**Plaintiff's Response to Statement 1:** Admitted. See Plaintiff's Local Civil Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment ("Pl's 56.1"), ECF Nos. 83, 84 ¶ 1.

2. On or about December 10, 2027, BOA provided Plaintiff a loan in the principal amount of $30,000. DE 85-5, p. 30.

**Plaintiff's Response to Statement 2:** Admitted. See Pl's 56.1 ¶ 6.

3. Plaintiff's loan agreement required her and/or her father to make monthly payments to repay the loan. DE 85-5, p. 24, ¶ E.3.

**Plaintiff's Response to Statement 3:** Admitted. See Pl's 56.1 ¶ 9(c).

4. Plaintiff's loan agreement also specifically incorporates the Note Disclosure Statement, which calls for monthly payments over a 20-year (or 240-month) period beginning on December 9, 2010. DE 85-5, p. 23, ¶ B.2. and p. 30.

**Plaintiff's Response to Statement 4:** Admitted. See Pl's 56.1 ¶ 10(a).

5. Plaintiff's loan agreement includes a provision which expressly allows the creditor to declare the whole loan due for any default and collect an interest rate that is two percent higher. DE 85-5, p. 24, ¶ I.

**Plaintiff's Response to Statement 5:** Disputed in part. Admitted that Plaintiff's Loan Note contains the language in ¶ I available at ECF NO. 85-5, p.24 and Pl's 56.1 ¶ 10(a). Plaintiff disputes the characterization of the language of ¶ I of the Loan Notes and refers the Court instead to the language itself for its content.

6.      Plaintiff's loan agreement also includes a non-waiver of creditor's right provision in conjunction with a waiver of the borrowers' right to notice and presentment. DE 85-5, p. 25, ¶ L.3.

**Plaintiff's Response to Statement 6:** Disputed in part. Admitted that Plaintiff's Loan Note contains the language in ¶ L.3 available at ECF No. 85-5, p.25 and Pl's 56.1 ¶ 10(b). Plaintiff disputes the characterization of the language of ¶ L.3 of the Loan Notes and refers the Court instead to the language itself for its content.

7.      Neither Plaintiff nor her father made the required monthly payments to BOA and BOA charged off the loan on July 23, 2012. DE 85-5, pp. 32-33.

**Plaintiff's Response to Statement 7:** Admitted. See Pl's 56.1 ¶¶ 23-26.

8.      BOA placed the charged off balance of Plaintiff's loan with Williams & Fudge, Inc. ("WFI") to try and collect. DE 85-2, p. 28 (WFI Tr. 28:1-12).

**Plaintiff's Response to Statement 8:** Admitted. See Pl's 56.1 ¶¶ 42-44.

9.      BOA did not accelerate Plaintiff's loan because it was not their policy to do so. DE 85-1, pp. 54-55 (SLS Tr. 56:23-57:3), p. 168 (SLS Tr. 176:13-19).

**Plaintiff's Response to Statement 9:** Disputed. Whether or not BOA "accelerate[d]" Plaintiff's loan calls for a legal conclusion as to what constitutes acceleration that is inappropriate for inclusion in statement of material facts. Disputed on the basis that BOA did collect the full balance due. Pl's 56.1 ¶¶ 40-44, 48-57, 111-19. Disputed on the basis that any policy Bank of America had is not within SLS's personal knowledge. Disputed on the basis that any statements Bank of America made to SLS regarding that policy are inadmissible hearsay.

10. WFI sent correspondence to Plaintiff and her father identifying the full amount of the loan, which at that point was the charge-off balance. DE 85-1, pp. 167-171 (SLS Tr. 175:25-179:12); DE 85-9, p. 12 (the template for the letter discussed in the transcript).

**Plaintiff's Response to Statement 10:** Disputed in part. Admitted that WFI sent correspondence to Plaintiff and her father identifying the charge-off balance on her loan as due between the years 2012 and 2017 (on behalf of Bank of America) and 2017 to 2018 (on behalf of SLS). See Pl's 56.1 ¶¶ 48-51, 115-19; SLS Tr. 175:25-179:12. Disputed to the extent "at that point" is unclear to what point in time this statement is intended to refer.

11. WFI did not have authority to accelerate the loan on behalf of BOA. Decl. of Christopher P. Ruh ("Ruh Decl.), ¶ 24.

**Plaintiff's Response to Statement 11:** Disputed. Whether or not WFI "ha[d] authority" to "accelerate" Plaintiff's loan calls for a legal conclusion both as to what constitutes authority and what constitutes acceleration that is inappropriate for inclusion in statement of material facts.

12. WFI requested borrowers, including Ms. Dawson and her father, to pay the full balance owed to BOA but WFI did not, and indeed could not, require them to pay the full balance. Ruh Decl., ¶ 25.

**Plaintiff's Response to Statement 12:** Disputed in part. Admitted that WFI requested borrowers, including Ms. Dawson and her father, to pay the full balance owed to BOA. See Pl's 56.1 ¶¶ 57. Disputed on the basis that whether or not WFI "could . . . require" borrowers to pay the full balance is a legal conclusion regarding WFI's authority inappropriate for inclusion in statement of material facts and is a vague term.

13. WFI received a total of four payments towards Plaintiff's loan, to who of which were returned for insufficient funds. DE 85-5, p. 35.

**Plaintiff's Response to Statement 13:** Admitted so long as "to who" is replaced with "two." See Pl's 56.1 ¶¶ 45-46.

    14.    BOA sold a pool of non-performing student loans to SLS on October 31, 2017, including Plaintiff's loan. DE 75-1; DE 85-5, pp.36-39; DE 86-1.

**Plaintiff's Response to Statement 14:** Admitted. See Pl's 56.1 ¶ 84.

    15.    WFI managed the portfolio for SLS, and SLS placed Plaintiff's loan with WFI for collection. DE 85-1, pp. 28 (SLS Tr. 26:3-14) and 66-67 (SLS Tr. 72:24-73:5).

**Plaintiff's Response to Statement 15:** Disputed in part. Admitted that on or after October 31, 2017, SLS placed Plaintiff's loan with WFI for collection. See Pl's 56.1 ¶ 110. Disputed on the basis that "managed the portfolio" is an unclear term and no evidence in the record supports this term.

    16.    On or about November 10, 2017, WFI sent Plaintiff indicating [sic] SLS purchased her loan from BOA and requested, but did not require, Plaintiff to pay the balance, and provided the disclosures required by FDCPA Section 1692g. DE 87-7, p. 20. DE 85-1, pp. 179-180 (SLS Tr. 187:3-188:16); 85-20, p. 2-3.

**Plaintiff's Response to Statement 16:** Disputed in part. Admitted that on or about November 10, 2017, WFI sent Plaintiff a letter substantially identical to the template available at ECF No. 85-20 p. 2. See Pl's 56.1 ¶ 115. Plaintiff disputes the characterization of the language of November 10, 2017 letter and refers the Court instead to the language itself for its content.

    17.    Neither Plaintiff nor her father made any additional payments. DE 85-7, p. 4.

**Plaintiff's Response to Statement 17:** Disputed in part. Admitted that neither Plaintiff nor her father made any payments after April 11, 2013. See Pl's 56.1 ¶ 45. Disputed as the meaning of the term "additional payments" is unclear when there is no time frame referred to.

18. WFI therefore accelerated Plaintiff's loan on December 1, 2021, with SLS's permission by following the express procedure approved by SLS, which included sending an acceleration notice (which included the language "Pursuant to the Agreement, SLS hereby accelerates the loan and demands all payments due.") and calculating the principal only portion of the loan within the applicable statute of limitations at a zero percent interest rate. DE 85-5, pp. 2-48; Ruh Decl., ¶¶ 16-18.

**Plaintiff's Response to Statement 18:** Disputed in part. Admitted that WFI, on behalf of SLS purported to accelerated Plaintiff's loan on December 1, 2021, with SLS's permission by following the express procedure approved by SLS, which included sending a letter that SLS calls an "acceleration notice" (which included the language "Pursuant to the Agreement, SLS hereby accelerates the loan and demands all payments due.") and calculating the principal only portion of certain payments with at a zero percent interest rate. Disputed on the basis that whether or not WFI "accelerate[d]" Plaintiff's loan calls for a legal conclusion as to what constitutes acceleration that is inappropriate for inclusion in statement of material facts. Disputed on the basis that the loan was not accelerated because BOA and SLS previously collected the full amount due. Pl's 56.1 ¶¶ 40-44, 48-57, 111-19. Disputed on the basis that whether payments were "within the applicable statute of limitations" calls for a legal conclusion as to what the limitations period was and how it was calculated that is inappropriate for inclusion in statement of material facts.

19. WFI then placed the account with Roach & Murtha to file suit on behalf of SLS. DE 85-1, p. 29 (SLS Tr. 27:2-23).

**Plaintiff's Response to Statement 19:** Admitted.

20. Roach & Murtha filed suit on SLS's behalf and Plaintiff filed an answer disputing the claim. DE 85-18, pp. 2-5; DE 85-19, p. 2.

**Plaintiff's Response to Statement 20:** Admitted. See Pl's 56.1 ¶¶ 170, 177-78.

21.     Plaintiff eventually retained counsel who sent a letter to Roach & Murtha regarding the lawsuit.  DE 85, ¶ 33.

**Plaintiff's Response to Statement 21:** Admitted. See Pl's 56.1 ¶ 203.

22.     After some back and forth, Roach & Murtha discontinued the lawsuit without prejudice. DE 20, ¶ 65 and DE 85-5, p. 155 (SLS Tr. 161:11-12).

**Plaintiff's Response to Statement 22:** Disputed in part. Admitted that on or about October 23, 2023, Roach & Murtha, in its role as SLS's attorney, discontinued the lawsuit against Ms. Dawson without prejudice. See Pl's 56.1 ¶ 204. Disputed on the basis that "[a]fter some back and forth" is an unclear term.

23.     SLS takes great care to ensure compliance, conferring with counsel (specifically The Echols Firm) and accountants, as well as using conservative calculation to collect portions of the debt that is within the statute of limitations, initiating manual reviews to loans prior to acceleration, and taking preventative measures when it learns of a potential statute of limitations problem.  Ruh Decl., ¶¶ 12-19, 26-35; DE 86-2.

**Plaintiff's Response to Statement 23:** Disputed in part. Admitted that SLS confers with counsel, including the Echols Firm, and accountants; that SLS initiates manual reviews prior to litigation; and that at one point SLS took certain measures when it learned of what it understood to be a potential statute of limitations problem. Disputed on the basis that whether or not SLS "us[es] [a] conservative calculation to collect portions of the debt that is within the statute of limitations" calls for a legal conclusion as to what the limitations period was and how it was calculated that is inappropriate for inclusion in statement of material facts. Plaintiff disputes the characterization of

7

"great care to ensure compliance" and "conservative calculation" and refers the Court instead to the testimony itself for its content.

24. The BOA portfolio is somewhat unique from the debts WFI normally collects, which requires manual review that other accounts do not because they are not subject to acceleration. Ruh Decl., ¶¶ 26-30.

**Plaintiff's Response to Statement 24:** Disputed. Whether or not accounts are or are not "subject to acceleration" calls for a legal conclusion that is inappropriate for inclusion in statement of material facts. Disputed to the extent that "somewhat unique" is an unclear term.

25. Most accounts WFI collects are static accounts not subject to acceleration. Such accounts have one default and, thus, one statute of limitations, which is suitable for flagging via automated system. Ruh Decl., ¶¶ 27, 29.

**Plaintiff's Response to Statement 25:** Disputed. Whether or not accounts are or are not "subject to acceleration," "have one default," and have "one statute of limitations" each call for a legal conclusion that is inappropriate for inclusion in statement of material facts. Disputed to the extent that "static account" and "suitable for flagging via automated system" are unclear terms.

26. While the current procedure for filing suit on BOA of loans [sic] is to first accelerate them, SLS previously did not accelerate loans placed for litigation because such loans were within the applicable statute of limitations for all amounts due and because the filing of the lawsuit can constitute the act necessary to accelerate. Ruh Decl., ¶¶ 8-9.

**Plaintiff's Response to Statement 26:** Disputed. Whether SLS "first accelerate[s]" loans; whether SLS previously "did not accelerate loans"; whether "such loans were within the applicable statute of limitations for all amounts due"; and whether "the filing of the lawsuit can constitute the act

necessary to accelerate" each call for a legal conclusion that is inappropriate for inclusion in statement of material facts.

27. When WFI calculates an accelerated balance for SLS, it assumes a zero percent interest rate over the life of the loan resulting in even principal payments. Ruh Decl., ¶ 13.

**Plaintiff's Response to Statement 27:** Admitted. See Pl's 56.1 ¶ 140.

28. Typical amortization schedules, however, result in early payments being made up of largely interest and later payments being made up of largely principal. Ruh Decl., ¶ 14.

**Plaintiff's Response to Statement 28:** Admitted.

29. By calculating the accelerated balances the way it does, SLS is effectively waiving a portion of the debt, which is allowed by the loan terms, and which is a benefit to the borrow [sic]. Ruh Decl., ¶ 15; DE 85-5, p. 25, ¶ L.3.

**Plaintiff's Response to Statement 29:** Disputed. Whether SLS is "effectively waiving a portion of the debt" and whether this "is allowed by the loan terms" each call for a legal conclusion that is inappropriate for inclusion in statement of material facts. Disputed that these practices provide a "benefit to borrow[ers]" as that is not within SLS's personal knowledge and there is no other evidence in the record.

30. After WFI accelerates an account, it prepares a litigation package for SLS's approval and, if SLS approves, places the account with counsel, who may or may not file suit. DE 85-5, pp. 93-94 (SLS Tr. 99:1-100:5); DE 75-5.

**Plaintiff's Response to Statement 30:** Disputed in part. Admitted that after WFI purports to accelerate an account, it prepares a litigation package for SLS's approval and, if SLS approves, places the account with counsel to file suit. Disputed to the extent that no evidence in the record supports that the counsel "may or may not file suit." Disputed to the extent that "[a]fter WFI

9

accelerates an account" calls for a legal conclusion that is inappropriate for inclusion in statement of material facts. Also disputed on the basis that the citation should be to ECF No. 85-1 p. 93-94, not ECF No. 85-5.

31. In addition to Plaintiff's loan agreement, the loan agreements of other putative class members allows for acceleration. DE 85-6, p. 4, ¶ I, p. 10, ¶ 6, p, 17, ¶ I, p. 23, ¶ I, p. 29, ¶ I, p. 36, ¶ I, p. 41, ¶ I, p. 46, ¶ I, p. 52, ¶ I, p. 58, ¶ 6.

**Plaintiff's Response to Statement 31:** Disputed. Whether a loan agreement "allows for acceleration" calls for a legal conclusion that is inappropriate for inclusion in statement of material facts. Plaintiff disputes the characterization of contracts and refers the Court instead to the contracts themselves for their content.

32. SLS brought suit against Patricia Shaw and she asserted a counterclaim. Ruh Decl. ¶¶ 31-32.

**Plaintiff's Response to Statement 32:** Admitted.

33. She moved for summary judgment, attaching two letters of which SLS and BOA were previously unaware. Ruh Decl, ¶¶ 32-34 and Ex. A.

**Plaintiff's Response to Statement 33:** Disputed in part. Admitted that Ex. A contains two letters to a consumer named Patricia J. Shaw and that SLS was unaware of these letters. Disputed on the basis that SLS has no personal knowledge of Bank of America's awareness of these letters, and that any statements Bank of America made to SLS regarding those letters would be inadmissible hearsay.

34. SLS investigated and found out a small portion of the portfolio had been previously sold to the National Collegiate Trust and repurchased by BOA. Ruh Decl. ¶¶ 33-35.

**Plaintiff's Response to Statement 34:** Admitted.

35. BOA informed SLS they were unaware the National Collegiate Trust had previously accelerated any such loans, so SLS identified such loans in which acceleration potentially happened and ceased collection efforts. Ruh Decl. ¶ 35.

**Plaintiff's Response to Statement 35:** Disputed in part. Admitted that SLS at some point in time ceased collection efforts on some accounts. Disputed on the basis that the truth of any statements Bank of America made to SLS are not within SLS's personal knowledge. Disputed on the basis that any statements Bank of America made to SLS are inadmissible hearsay. *See* Local Civil Rule 56.1(d). Disputed on the basis that "loans in which acceleration potentially happened" is an unclear term and calls for a legal conclusion.

36. Plaintiff's loan agreement includes a California choice of law provision. DE 85-5, p. 25, ¶ L.1.

**Plaintiff's Response to Statement 36:** Admitted.

37. Historically, a significant amount of obligations WFI collected were Perkins, which have no statute of limitations. Ruh Decl., ¶ 28.

**Plaintiff's Response to Statement 37:** Admitted.

38. SLS disagrees with the decision in the Digiore case and would have appealed the decision but it was not alerted to the decision until after the deadline to do so had passed. Ruh Decl., ¶¶ 36-37.

**Plaintiff's Response to Statement 38:** Admitted.

39. A different Florida court in the Brazelton case found the opposite of the court in the Digiore case. Decl. of Brendan Little ("Little Decl.), ¶ 6 and Ex. D.

**Plaintiff's Response to Statement 39:** Admitted.

40. Brazelton and Digiore were represented by the same counsel. Ruh Decl., ¶ 38.

**Plaintiff's Response to Statement 40:** Admitted.

41. Numerous other courts across the country have found in SLS's favor on both acceleration and the interpretation of collection letters. Little Decl., ¶¶ 3-10 and Ex. A-H.

**Plaintiff's Response to Statement 41:** Disputed in part. Admitted that the decisions available at Exhibits A-H of the Little Declaration, ECF Nos. 100-1 to 100-8, were issued. Plaintiff disputes the characterization of those decisions and refers the Court instead to the decisions themselves for their content.

42. Payments made on Plaintiff's loan were to be applied to late fees, other fees and charges, then interest, then principal. DE 85-5, p. 24, ¶ E.5.

**Plaintiff's Response to Statement 42:** Admitted. See Pl's 56.1 ¶ 9(g).

43. Plaintiff never made a payment on the loan. DE 87, p. 1, ¶ 4.

**Plaintiff's Response to Statement 43:** Admitted.

44. Plaintiff does not recall receiving prior letters from BOA. DE 85-4, pp. 73-77 (Dawson Tr. 72:22-77:11).

**Plaintiff's Response to Statement 44:** Admitted.

45. The damages Plaintiff claims are solely related to the filing of the underlying lawsuit. DE 85-4, pp. 1-5, ¶¶ 5-31.

**Plaintiff's Response to Statement 45:** Disputed. What the "damages Plaintiff claims" are or are not "related to" calls for a legal conclusion that is inappropriate for inclusion in statement of material facts.

46. Plaintiff testified she wanted to represent people sued by SLS. DE 85-4, p. 39.

**Plaintiff's Response to Statement 46:** Admitted.

47. Plaintiff contends she voluntarily moved to New York to face the lawsuit even though she had a court date set. DE 87, pp.. 3-4, ¶ 20, 27.

**Plaintiff's Response to Statement 47:** Disputed in part. Admitted that around March 2023, Ms. Dawson moved back to New York from Atlanta, Georgia in order to face the collection lawsuit. See Pl's 56.1 ¶ 179. Admitted that Ms. Dawson's July 11, 2023 court date was scheduled on or about January 17, 2023. ECF No. 85-19. Plaintiff disputes the characterization of Ms. Dawson's testimony and refers the Court instead to the testimony itself for its content.

48. SLS tracks accounts place with attorneys but not suits filed, and does not know whether money received is as a result of litigation or collection efforts. DE 75-5.

**Plaintiff's Response to Statement 48:** Disputed in part. Admitted that SLS tracks accounts placed with attorneys but not suits filed. Admitted that SLS "cannot easily identify" the information and "without conducting a manual account level inquiry." ECF No. 75-5. Disputed that SLS "does not know" the information.

49. SLS has settled various claims with consumers, but does not know how many. Ruh Decl., ¶ 40.

**Plaintiff's Response to Statement 49:** Admitted.

50. The correct number of acceleration notices is identified in SLS's interrogatory responses. Ruh Decl., ¶ 22.

**Plaintiff's Response to Statement 50:** Disputed. Mr. Ruh testified under oath as SLS's corporate representative that the "vast majority or all" of SLS's lawsuits against Class Members were preceded by acceleration; that he could not remember any "specific accounts" where SLS brought a lawsuit against a Class Member that was not preceded by acceleration; that he could not "think of a circumstance" where a lawsuit would not have been preceded by acceleration; that SLS

"approve[d] the litigation after" an acceleration notice had been sent; that "[o]ne of the steps made prior to litigation is the acceleration"; and that SLS files a lawsuit "at some point after" the acceleration notice is sent. SLS Tr. 144:11-145:19, 98:20 100:5.

Dated: March 26, 2025

        Lisa Rivera, Esq.
        NEW YORK LEGAL ASSISTANCE GROUP
        100 Pearl St., 19th Floor
        New York, NY 10004
        (212) 613-5000

        By:

        _____
        Jessica Ranucci, of counsel
        Danielle Tarantolo, of counsel
        (212) 613-7578
        jranucci@nylag.org
        dtarantolo@nylag.org